Craton **LIDDELL**, et al., Plaintiffs,

v.

The **BOARD OF EDUCATION OF the CITY OF ST. LOUIS, STATE OF MISSOURI**, et al., Defendants.

No. 72–100C(3).

United States District Court, E.D. Missouri, E.D.

June 30, 1983.

William P. Russell, St. Louis, Mo., for Liddell.

Michael J. Hoare, St. Louis, Mo., for Caldwell.

Kenneth C. Brostron, St. Louis, Mo., for Bd. of Educ., City of St. Louis.

Bruce S. Feldacker, St. Louis, Mo., for St. Louis Teachers Union Local 420—applicant/intervenor.

Larry R. Marshall, Sp. Asst. Atty. Gen., Columbia, Mo., for State defendants.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court on a motion to intervene filed by St. Louis Teachers Union Local 420, American Federation of Teachers (Local 420), H(2293)83, dated April 18, 1983. Several parties responded in opposition to this motion. *See* H(2317)83, dated April 25, 1983; H(2328)83, dated April 25, 1983. At the regularly scheduled motion day on May 4, 1983, the Court heard oral argument on this motion.

Pursuant to Fed.R.Civ.P. 24(a), Local 420 seeks leave to intervene as a party plaintiff only as to the remedy contained in the settlement agreement submitted by some parties as a proposed resolution of the 12(c) phase of this case.

By the explicit language of Rule 24, timeliness in seeking leave to intervene is the Court's initial inquiry in determining whether or not to grant intervention. *NAACP v. State of New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648 (1973). If untimely, the application must be denied. *Id.* In determining the application's timeliness, the Court must consider all the circumstances. *Id.* at 366, 93 S.Ct. at 2603; *McClain v. Wagner Electric Corp.,* 550 F.2d 1115, 1120 (8th Cir.1977); *Kozak v. Wells,* 278 F.2d 104, 109 (8th Cir.1960). Thus, the Court looks to the progress of the litigation at the time intervention is sought, the length of the delay, the reason for the delay, and the prejudice other parties would suffer if intervention were permitted. *McClain v. Wagner Electric Corp., supra* at 1120.

Local 420 did not seek leave to intervene when the Court denied its objections to the original parties' consent decree of December 24, 1975, pertaining to public schools within the City of St. Louis. *See* order dated January 16, 1976. The union did not seek to intervene when the United States Court of Appeals for the Eighth Circuit required the district court to consider the drafting and implementation of a mandatory remedial plan to desegregate the City's public schools. *See Adams v. United States,* 620 F.2d 1277 (8th Cir.) (en banc), *cert. denied,* 449 U.S. 826, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980). And Local 420 did not request status as a party intervenor when the district court subsequently approved and required implementation of a remedial plan for the City's public schools. *Liddell v. Board of Education,* 491 F.Supp. 351 (E.D. Mo.1980), *aff'd and remanded on other grounds,* 667 F.2d 643 (8th Cir.), *cert. denied,* 454 U.S. 1081, 1091, 102 S.Ct. 634, 656, 70 L.Ed.2d 614, 629 (1981).

Nor did the union seek to intervene when the district court considered proposals for implementation of a 12(a) voluntary interdistrict remedial plan, proposals for implementation of a 12(b) interdistrict vocational education plan, or feasibility studies for the implementation of a 12(c) mandatory interdistrict remedial plan. Furthermore, the union did not seek intervention in August, 1981, when the Court granted Caldwell and City Board leave to file amended claims asserting interdistrict liability against certain new defendants and seeking a metropolitan-wide remedy. The union moreover did not request party intervenor status, or seek leave to present its position in any manner, after the Court entered its "Interim Order for Mandatory Interdistrict Desegregation," H(1183)82, dated August 6, 1982, which specifically pertains to the 12(c) interdistrict remedial phase of this litigation.

Instead, the union has waited until after the conclusion of extensive discovery proceedings pertaining to the 12(c) liability phase of the case and until the completion of sensitive negotiation efforts before seeking party status in one particular aspect of this litigation. It has been over eleven years since plaintiffs initiated this litigation, over three years since the appellate court initially mandated efforts to change the school system within the City of St. Louis, almost two years since the Court permitted the addition of new parties and the filing of new interdistrict claims, and

several months since the completion of relevant discovery proceedings in this phase of the case. The Court fails to understand how this renders the instant application timely.

In addition, the union has had numerous opportunities before this date to seek intervention. The record clearly discloses that on several occasions throughout the course of this litigation Local 420 has sought and obtained the opportunity to present its position to the Court. *See* objections for the purpose of clarification of the proposed consent decree filed by Local 420 on January 16, 1976; Local 420's amicus curiae brief regarding proposed consent agreement in the 12(b) interdistrict vocational education phase of this case, H(204)81, dated June 22, 1981; Local 420's amicus brief in response to joint report regarding "Memorandum of Understanding" in the 12(b) interdistrict vocational education phase of this case, H(581)81, dated October 29, 1981; Local 420's amicus brief in response to feasibility studies for the interdistrict desegregation of public schools in the St. Louis metropolitan area, H(725)82, dated January 5, 1982. *Cf.* Order H(708)81, dated December 18, 1981, denying local counsel's entry of appearance on behalf of Local 420 as amicus curiae, without prejudice to seeking leave to file as amicus on specific issues or particular pleadings.

More recently, during the parties' settlement efforts, movants sought to review and comment upon any possible agreement before the agreement was made public and filed of record. *See* H(2140)83, dated February 22, 1983, and lodged "Motion for Leave to File Suggestions" attached thereto. When the initial "Agreement in Principle" was filed of record and available to the Court and the public, Local 420 accepted the Court's invitation to file its comments on that agreement in principle. *See* Order H(2159)83, dated March 2, 1983; PC(2)83, dated March 10, 1983. Later, after the Special Master and several parties submitted a proposed settlement agreement to resolve the 12(c) interdistrict phase of the case, the Court invited interested members of the public to comment either in writing

by May 10, 1983, or orally at a fairness hearing scheduled to begin April 28, 1983. Order H(2276)83, dated April 8, 1983. In lieu of a direct response to this order, Local 420 sought leave to file its motion to intervene. H(2292)83, dated April 18, 1983. The Court permitted the filing of the union's motion to intervene and reiterated that the union could participate in the fairness hearing if it complied with relevant court orders, H(2291)83, dated April 18, 1983. The union then filed its statement of position regarding the proposed settlement agreement, H(2305)83, dated April 21, 1983, and participated in the fairness hearing. Moreover, at its request during the fairness hearing, the Court granted the union until May 10, 1983, to file its proposed changes in the settlement agreement's language for the Court's consideration.

Movant does not assert that it lacked knowledge of the pendency of the action, an excuse which may constitute justification for an untimely application to intervene. *See Equal Employment Opportunity Commission v. Westinghouse Electric Corp.,* 675 F.2d 164, 165 (8th Cir.1982) (per curiam); *NAACP v. New York, supra,* 413 U.S. at 366–67, 93 S.Ct. at 2603. The union also does not assert that it was previously unaware that the litigation might impact its asserted interests. In fact, the record of this case, as more specifically set forth above, clearly discloses that at least as early as January, 1976, Local 420 was both aware of this lawsuit and aware that this litigation might affect its interests.

Local 420 instead asserts that the application is timely, despite any apparent delay, because the union acted promptly after becoming "aware that its interests were no longer being adequately represented by the existing parties." In support of this assertion, the union directs the Court's attention to *United Airlines, Inc. v. MacDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) and *Liddell v. Caldwell,* 546 F.2d 768 (8th Cir.1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977). Those cases are clearly distinguishable from the present situation since in both instances the

would-be intervenor was a member of a class purportedly represented by existing parties. Here, the union is not seeking to represent or to present the positions of members of either of the two classes certified in this case. Furthermore, the union does not contend that resolution of the pending litigation will foreclose the union's assertion of its interests in this or any other forum, a consequence that might accrue to absent class members.[1]

Finally, the Court looks to the potential prejudice to existing parties if the motion to intervene is allowed. Of significance is the fact that Local 420 seeks party status for the explicitly limited purpose of participating in the remedy offered by the proposed settlement agreement now pending before the Court. The union presumes, throughout its motion and supporting documents, the Court's approval and implementation of this settlement agreement. Nowhere does the union propose its status as a party if the settlement agreement is not approved and this matter proceeds to trial, or a similar status for any other phase of this case. In this phase of the case alone the parties have completed wide-ranging and extensive discovery, have prepared for trial on interdistrict liability, have conducted sensitive negotiations in an effort to settle this phase of the case, and have taken on the responsibilities of implementing the agreement if approved or, as to some parties, proceeding to trial if the agreement is not approved. The particularities of this case may not be lightly dismissed in an effort to interpose one's own views at a crucial juncture without simultaneously taking on the responsibilities and risks attendant to remaining matters. The parties will be prejudiced if this limited participation were permitted or if Local 420's fuller participation were granted at this late stage of the proceedings.

Under these circumstances, in consideration of (a) the delay in seeking to intervene, (b) the union's prolonged awareness of both this litigation and its potential impact on the union's asserted interests, (c) the numerous opportunities for the union's participation throughout the course of these proceedings, and (d) the insufficiency of the alleged reason for noncompliance with the timeliness requirement of Fed.R.Civ.P. 24, the union's belated motion to intervene will be denied. *Michigan Ass'n for Retarded Citizens v. Smith,* 657 F.2d 102 (6th Cir. 1981) (in action by persons in institution challenging conditions at institution, motion to intervene by union representing employees of defendant institution denied as untimely where union members aware of litigation and its potential impact on employment conditions and motion not filed until after consent decree entered); *Preston v. Thompson,* 589 F.2d 300, 304 (7th Cir.1978) (in suit by prisoners challenging conditions at prison, motion to intervene filed by union representing prison guards denied as untimely where union members aware of litigation and its potential impact on union's asserted interests and motion not filed until after preliminary relief granted).

---

[1] The settlement plan deals with the problems of desegregation of an educational system and does not constitute a collective bargaining agreement nor can it supplant the nation's labor laws.