**Oliverio MARTINEZ Plaintiff,**

v.

**CITY OF OXNARD, et al., Defendants.**

**No. CV 98–99313 FMC.**

United States District Court,
C.D. California.

June 23, 2005.

F. Samuel Heredia, Mark Kenneth Flores, Heredia & Associates, Oxnard, CA, John C. Burton, John C. Burton Law Offices, Pasadena, CA, R. Samuel Paz, R. Samuel Paz Law Offices, Sonia M. Mercado, Sonia Mercado & Associates, Culver City, CA, for Plaintiff.

Alan E. Wisotsky, Jeffrey Held, Alan E. Wisotsky Law Offices, Oxnard, CA, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO INTERVENE AND TO MODIFY PROTECTIVE ORDER

COOPER, District Judge.

This matter is before the Court on Plaintiff's Motion to Intervene and to Modify Protective Order (docket no. 145), filed June 1, 2005. The Court, having read and considered the moving, opposition and reply documents submitted in connection with this motion, hereby **GRANTS** the motion for the reasons and in the manner set forth below. The Court deems this matter appropriate for decision without oral argument. *See* Fed. R.Civ.P. 78; Local Rule 7–15. Accordingly, the hearing set for June 27, 2005 is removed from the Court's calendar.

### I.  Background

On November 19, 1998 Plaintiff Oliverio Martinez brought a complaint for damages, alleging violations of his civil rights under 42 U.S.C. § 1983. His claim arises from an incident that occurred on November 28, 1997, in which he was shot by Oxnard Police Officer Maria Pena, and left blinded and paralyzed in both legs. Martinez claims, *inter alia*, that the shooting was unjustified, and that it occurred at the order of Senior Police Officer and Defendant Andrew Salinas.

In connection with his claim that the use of force was unreasonable and that the Defendants Oxnard Police Department and Oxnard Chief of Police Lopez are likewise responsible for the shooting, Martinez conducted discovery regarding Salinas' employment background. He discovered the following information:

- Prior to working for the Oxnard Police Department ("OPD") Salinas applied for employment with the Los Angeles Police Department ("LAPD"), but was disqualified from employment for "immature judgment," "lack of good employment record," and "failure to provide complete work history."

- Salinas applied with the LAPD a second time and was again disqualified for "history of employment difficulties, including three instances of job abandonment, poor attendance, tardiness and authority conflict ...failure to follow policy, carelessness, disloyalty and immaturity." A LAPD psychiatrist concluded that Salinas "may be quick tempered, impulsive and may respond poorly to stress."

- Salinas' pre-employment record with OPD contains three separate applications for employment, each of which allegedly contain misrepresentations regarding his background.
- Dr. Theodore Nutter, who conducts psychological examinations for OPD, after examining the OPD pre-employment application and background investigation of Salinas, testified in deposition that Salinas had been untruthful during a psychological examination. He also testified that had Salinas disclosed all of his background information, he would have disqualified him as being psychologically unfit to be a police officer for OPD.
- Dr. Nutter claimed that had he known of the LAPD's findings, he would have been concerned and requested the LAPD records.
- Sergeants Amar and Miller, who wrote favorable recommendations for Salinas in connection with his employment with the OPD, omitted material information from their recommendations: (1) that Salinas had been disqualified from employment with the LAPD; (2) that weeks before Salinas was interviewed by Dr. Nutter, Amar told him that he was disqualified from the process of being considered as a candidate for police officer at OPD due to his "work habits and immaturity," that he was not a "team player," that he "has trouble with coworkers and supervisors," and that he failed to follow the advice of senior police officers and blamed others for his own immaturity and problems; (3) that Salinas had "domestic problems with his girlfriend on the phone and at the counter" during his job as a police clerk with OPD; (4) that he put off his work on coworkers; (5) that he was "coming in late, and arguing with his supervisor;" (6) that many of Salinas' coworkers and supervisors commented that Salinas was "not honest," "not trustworthy with confidential information;" "not emotional[ly] stable;" "insubordinate;" "very immature;" "hidden temper;" "losing temper easily;" and "volatile."
- Eric Gonzalez is another person who was allegedly shot without justification by Salinas.
- Salinas was also allegedly involved in physical altercations with eight other named individuals.

*See generally* Paz Decl.

All of the information Martinez uncovered is covered by protective orders entered on April 5, 2000, December 1, 2004 and January 3, 2005.

Counsel for Martinez, Samuel Paz, also represents another litigant, Epigmenio Barragan, in a suit for civil rights violations. Like Martinez, Barragan alleges that he was injured in an unjustified shooting involving Salinas.

Martinez has moved the Court to allow intervention by Barragan and to modify the protective orders in this case. Barragan wishes to obtain the information regarding Salinas' background and employment history.

## II. Discussion

Fed.R.Civ.P. 24(b) allows intervention in an action "when an applicant's claim or defense and the main action have a question of law or fact in common ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The Ninth Circuit has held that Rule 24(b) allows intervention by a third party in order to modify a protective order. *Beckman Industries, Inc. v. Int'l Ins. Co.,* 966 F.2d 470 (9th Cir.1992). "[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Foltz v. State Farm Mutual Automobile Ins. Co.,* 331 F.3d 1122, 1132 (9th Cir.2003). In determining whether intervention is appropriate, the court considers "the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Id.* The protected discovery should be "sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." *Id.* The court then weighs the "countervailing reli-

ance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133. To the extent the opposing party's reliance on the protective order is compromised, the party's legitimate interests in "secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *Id.* (quoting *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1426 (10th Cir.1990)).

■ In this case, the protected discovery is highly relevant to Barragan's case. Barragan has brought suit against the same defendant as Martinez and asserts the same cause of action. Additionally, there is a large amount of discovery. The LAPD records alone consist of 220 pages of materials, and there are several categories of materials from two different law enforcement agencies and four depositions. *See* Paz Decl. Obtaining all of this information again would be a waste of time and resources. The information is already in the possession of Barragan's counsel through his representation of Martinez. Defendants have not demonstrated that their reliance on the protective orders outweighs the relevance of the evidence sought. To the extent Defendants have relied on the orders, Barragan has agreed to be bound by their terms.

■ Defendants argue that Plaintiff's motion is not timely because Barragan has already had the opportunity to discover this information and the discovery deadline has passed in Barragan's case. When considering the timeliness of a motion to intervene, courts consider three factors: (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; (3) and the reason for and length of the delay. *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.,* 62 F.3d 1217 (9th Cir.1995). The relevant inquiry is the effect the timeliness of the motion has on these proceedings, not whether the motion was timely as to the collateral proceedings. *See* Fed.R.Civ.P. 24(b)(2). None of these factors indicate that Plaintiff's motion is untimely. First, although Martinez's case has been pending for some time,

discovery is still being conducted. Barragan's attempted intervention has not come at a time to cause prejudice to the parties. Second, Defendants have not demonstrated that they will be prejudiced by Barragan's intervention. This is especially true considering that Barragan has agreed to be bound by the terms of the protective orders. Third, Barragan delayed very little in seeking to intervene. It appears to the Court that much of the protected discovery sought by Barragan has only recently come to Martinez's attention. The deposition of Dr. Nutter took place on April 13, 2005. Paz Decl. at ¶ 2. The depositions of Sergeants Amar and Miller took place on April 20, 2005, and the deposition of Eric Gonzalez took place on April 6, 2005. Paz Decl. at ¶¶ 3, 4. There has not been much of a delay by Barragan in his efforts to intervene, with only a few months passing. The Court is not persuaded that Plaintiff's motion is untimely.

Defendants next argue that because discovery is closed in Barragan's case, to allow Barragan to intervene would circumvent the collateral court's scheduling orders. Defendants also argue that the close of discovery eliminates any possibility of duplicative discovery. The Court concludes that these arguments are more properly before the collateral court. In *Foltz,* the court held that "[b]ecause the district court that issued the order makes only a rough estimate of relevance, ... the only issue it determines is whether the protective order will bar the collateral litigants from gaining access to discovery already conducted. Even if the issuing court modifies the protective order, it does not decide whether the collateral litigants will ultimately obtain the discovery materials." *Foltz,* 331 F.3d at 1132–33. The court explained, that although it was important to "prevent the subversion of limitations on discovery in the collateral proceedings," the collateral court was in the best position to determine the ultimate discoverability of specific materials covered by the protective order. *Id.* at 1133. Defendants' claim that discovery is closed in Barragan's case is not entirely accurate. At a hearing on November 22, 2004, the collateral court explained that although it was not re-opening discovery

generally, it was "permitting discovery relating to information that Mr. Paz derives out of these documents and which he could not have deposed [the defendant] on before. If he can make that showing, he can reopen with respect to [the defendant]. [The magistrate judge] can determine whether or not a showing has been made." Plf.'s Reply at Exh. 1, 19:2–7. This Court leaves it to the collateral court to determine whether the information Barragan now seeks is within the scope of its prior order partially re-opening discovery.

### III. Conclusion

Plaintiff's motion is GRANTED. The protective orders entered in this case are modified to allow that documents, testimony, incident reports and other documents previously turned over to Martinez be turned over to Barragan as well. Plaintiff is ordered to submit a proposed modified protective order within 10 days of the date of this order.