

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2008

# Choike v. Slippery Rock Univ

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1537

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Choike v. Slippery Rock Univ" (2008). *2008 Decisions.* Paper 308.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/308

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 07-1537

———

ELIZABETH LAURA CHOIKE; ASHLEY GUINEVERE STONER;
HEATHER WALBRIGHT; JESSICA STUDENT; JENNIFER
VENET; ELIZABETH PENNING; LAURA A. SANFORD;
EMILY C. CAMPBELL; REBECCA ZINN; ALISON NICOLE
NUCKOLS; SARAH S. SANDER; RACHEAL BIENIAS, on
behalf of themselves
and all similarly situated
individuals; and JAMES V. YEAMANS

v.

SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA OF THE
STATE SYSTEM OF HIGHER EDUCATION; ROBERT SMITH,
in his official capacity as President of Slippery
Rock University; PAUL LUEKEN, in his official
capacity as Director of Athletics of Slippery
Rock University

*SAVE SLIPPERY ROCK WRESTLING ("SSRW"),
Appellant

*(Pursuant to Rule 12(a), F.R.A.P.)

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cv-00622)
District Judge: Honorable Donetta W. Ambrose

———

———

OPINION

———

SLOVITER, <u>Circuit Judge</u>.

Save Slippery Rock Wrestling ("SSRW" or "Appellant"), an association of student athletes "who desire to wrestle" on an intercollegiate team, App. at 3 n.1, appeals the District Court's denial of its motion to intervene in a Title IX lawsuit brought by a group of female student athletes ("Choike plaintiffs") against Slippery Rock University ("SRU" or "University defendants") ("Appellees," collectively).

**I.**

On January 30, 2006, SRU announced that for budgetary reasons it had decided to eliminate eight of its sports teams, five men's teams (swimming, water polo, wrestling, golf, and tennis) and three women's teams (swimming, water polo, and field hockey). Coaches and student athletes were notified at that time of the elimination.

On May 9, 2006, the Choike plaintiffs filed a well-publicized lawsuit under Title

———

[*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

IX of the Education Amendments of 1972, alleging SRU failed to provide equitable athletic opportunities and treatment for the University's female athletes. They sought a motion for a preliminary injunction to reinstate the women's swimming and water polo teams; the University defendants filed a motion to dismiss shortly thereafter. After discovery and a hearing, the District Court granted injunctive relief and granted in part and denied in part SRU's motion to dismiss.

The Choike plaintiffs and University defendants proceeded to court-supervised mediation and reached a tentative settlement regarding SRU's alleged failure to provide equitable athletic opportunities. Subsequently, according to the District Court, "[a]ll discovery has closed, expert reports have been exchanged and the parties represent that they will be ready for trial in April of 2007." App. at 2.

On November 22, 2006, SSRW filed a motion to intervene in the Title IX action under Rule 24 of the Federal Rules of Civil Procedure. On January 22, 2007, the District Court denied the motion to intervene as untimely. That is the subject of the appeal before us.[1] During the pendency of this appeal, and after further court-supervised mediation, notice of a proposed settlement, and a fairness hearing, the District Court approved the proposed class action settlement between the Choike plaintiffs and University defendants

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291 "because the denial of a motion to intervene is a final, appealable order." United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1179 (3d Cir. 1994).

3

on August 8, 2007.

## II.

We review a denial of a motion to intervene for abuse of discretion. Harris v. Pernsley, 820 F.2d 592, 597 (3d Cir. 1987). However, "our review of district court's decisions denying intervention of right is more stringent than the abuse of discretion review accorded to denials of motions for permissive intervention." Id. "We are more reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention." Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir. 1992).

Although much of SSRW's brief is devoted to arguments on the merits that the regulations and policy statements interpreting Title IX are unenforceable and unconstitutional,[2] we need not consider those arguments because our review is limited to whether the District Court abused its discretion in denying the motion to intervene as

---

[2] Specifically, SSRW argues, inter alia, that a 1979 Policy Interpretation, which set forth a flexible three-part test for assessing compliance with Title IX's requirements for intercollegiate athletics, see 44 Fed. Reg. 71413, at 71418 (Dec. 11, 1979), was "procedurally defective" and unenforceable under Title IX because it was not the result of rulemaking or regulation, Appellant's Br. at 48. SSRW also argues that the District Court was without jurisdiction over the underlying Title IX litigation, the Commonwealth has not abrogated its sovereign immunity, the 1979 Policy Interpretation is unenforceable, the Choike plaintiffs failed to comply with certain regulatory prerequisites, the Choike plaintiffs lack standing, and this court's decision in Cureton v. Nat'l Collegiate Athletic Ass'n, 198 F.3d 107 (3d Cir. 1999), limits the Title IX regulations to athletic programs receiving direct federal funding.

4

untimely.

"An application to intervene, whether of right or by permission,[3] must be timely under the terms of Rule 24." In re Fine Paper Antitrust Litig., 695 F.2d 494, 500 (3d Cir. 1982). A putative intervenor seeking to intervene under Fed. R. Civ. P. 24(a)(2) must establish that: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." Harris, 820 F.2d at 596. "The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" In re Fine Paper, 695 F.2d at 500 (citation omitted). Factors to consider in making the timeliness determination include "(1) [h]ow far the proceedings have gone when the movant seeks to intervene, (2) the prejudice which resultant delay might cause to other parties, and (3) the reason for the delay." Id. (alteration, citations, and internal quotation marks omitted).

The District Court found that SSRW's request for intervention was untimely and would prejudice Appellees because the case was in a "relatively advanced" stage. App. at 4. Discovery had not only closed, but it had been completed prior to the preliminary

---

[3] Permissive intervention is allowed "[o]n timely motion" if the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact," and if such intervention does not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

injunction hearing, which was held five months before SSRW's motion to intervene was filed. "Of even more significance, the parties have reached a [class action] settlement . . . before [SSRW] sought to intervene," and the District Court was concerned that allowing the intervention would "derail[]" the settlement. App. at 5 (emphasis in original). The Court also found that SSRW had offered "no legitimate reason for their delay." App. at 5.

We agree with the District Court's determination of untimeliness. It is true that "[t]he mere passage of time . . . does not render an application untimely. . . . [However,] the critical inquiry is: what proceedings of substance on the merits have occurred? This is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369-70 (3d Cir. 1995) (internal citations omitted). Here, as the District Court noted, discovery was complete and a preliminary injunction had been granted in a well-publicized lawsuit. See Donovan v. United Steelworkers of Am., AFL-CIO, 721 F.2d 126, 127 (3d Cir. 1983) ("All of the pre-trial work was complete at that time and the case was already scheduled for trial."). Moreover, the parties had reached a tentative settlement, which had been submitted to the District Court for preliminary approval at the time SSRW sought intervention.[4] See

---

[4] As the District Court noted, "[a]s this is a class action, settlement of a portion of Plaintiffs' claims is not as simple as signing a form," because the Court must preliminarily approve the

Orange County v. Air Cal., 799 F.2d 535, 538 (9th Cir. 1986) ("Although Irvine did intervene before the Stipulated Judgment was officially approved by the district court, the fact that Irvine waited until after all the parties had come to an agreement after five years of litigation should nevertheless weigh heavily against Irvine."). Thus, the District Court did not abuse its discretion in recognizing the potential for prejudice to the other parties if SSRW had been allowed to intervene.

To prevail, therefore, SSRW must convincingly explain its reason for the delay in filing its motion to intervene. See In re Fine Paper, 695 F.2d at 500. The District Court found that the student wrestlers were told about the elimination of the wrestling team by January 30, 2006, when the University announced its decision, and that "at least two of the Wrestlers were suspicious even then that Title IX had played a role in the elimination of the program." App. at 5. Indeed, an article in the campus newspaper quoted a student wrestler stating that he believed Title IX was a "significant" factor in the University's decision to eliminate the wrestling team. App. at 106. "To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1183 (3d Cir. 1994). The District Court certainly did not abuse its discretion in determining that

---

settlement, certify a class, give notice to class members, and schedule a fairness hearing. App. at 5 n.4.

SSRW "knew or should have known of the risk to their rights eleven months before they filed their Motion."  App. at 5.

Further, SSRW became aware of its rights in May 2006 when the Choike plaintiffs filed the underlying lawsuit, which created some publicity, and when the District Court granted injunctive relief in July 2006.  The District Court commented that the wrestlers took eleven months to find "a legal theory to pursue."  App. at 6.  This argument, as the District Court concluded, "merits little regard," and does not excuse the delay for seeking intervention in this case.

**III.**

For the reasons set forth above, we will affirm the judgment of the District Court denying intervention.