**PATRICK ANTHONY and VERNA DAGOU, Appellants**

**v.**

**INDEPENDENT INSURANCE ADVISORS, INC., PAUL LICHTMAN, FRANK McLAUGHLIN, CONTANT VIEW CONDOMINIUM ASSOCIATION for itself and on behalf of the individual unit owners therein, ARTHUR POMERANTZ, SERAPHINE ST. HILAIRE, GIFFORD ST. HILAIRE, LAURA FELICIANO-STOUT, ULRIC FRAITES, SHERON FRAITES, and McLAUGHLIN MANAGEMENT INC., Appellees**

S. Ct. Civ. No. 2010-0002 Consolidated Cases S. Ct. Civ. Nos. 2010-0002, 2010-0003

Supreme Court of the Virgin Islands

April 2, 2012

JOSEPH CAINES, ESQ., St. Thomas, USVI, *Attorney for Appellants*.

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Attorney for Appellees Independent Insurance Advisors, Inc. and Paul Lichtman*.

ARTHUR POMERANTZ, ESQ., Law Office of Arthur Pomerantz, St. Thomas, USVI; MARCIA B. RESNICK, ESQ., Law Offices of Marcia Resnick, St. Thomas, USVI, *Attorneys for Appellees Frank McLaughlin, et al.*

CABRET, *Associate Justice*; BRADY, *Designated Justice*; and WILLOCKS, *Designated Justice.*[1]

## OPINION OF THE COURT

(April 2, 2012)

CABRET, *Associate Justice*. This consolidated appeal concerns appellant Patrick Anthony's appeal from an order of the Superior Court granting summary judgment and appellant Verna Dagou's appeal from an order denying her motion to intervene. The case revolves around a condominium that was destroyed by Hurricane Marilyn in 1995. The condominium association and several individual owners, including Anthony, sued the insurance broker who had provided the contact to an Illinois insurance company who subsequently became insolvent without paying insurance premiums. Two and a half years after the case was filed, defendants moved for summary judgment. Similarly, three years after the case was initially filed, Dagou moved to intervene. Thereafter, before the Superior Court addressed either outstanding motion, all of the plaintiffs except Anthony settled the case and signed a release of their claims against the defendants. Approximately eight years after the settlement with the other plaintiffs, the Superior Court granted the summary judgment motion against Anthony and denied Dagou's application to intervene as untimely. For the reasons which follow, we affirm the trial court's grant of summary judgment against Anthony and its denial of Dagou's motion to intervene, but remand to permit the Superior Court to consider Anthony's motion to amend the complaint.

## I. FACTS AND PROCEDURAL HISTORY

We begin by recounting the facts that are common to both appellants, and then set out, below, those facts important to their individual issues on appeal. This appeal stems from a complaint filed on April 23, 1998

---

[1] Chief Justice Rhys S. Hodge and Associate Justice Ive Arlington Swan have been recused from this matter. The Honorable Julio A. Brady and the Honorable Harold W.L. Willocks sit in their place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

alleging negligent misrepresentation, fraudulent misrepresentation, breach of fiduciary duties, bad faith, and breach of contract against each defendant.[2] The three defendants listed in the complaint are Independent Insurance Advisors, Inc. ("Independent"), a Pennsylvania Corporation engaged in the insurance business; Paul Lichtman, the President of Independent; and C.E. Brathwaite and Associates, a Virgin Islands Corporation in the insurance business. The four plaintiffs listed in the original complaint are the Contant View Condominium Association ("Association"), for itself and on behalf of the individual unit owners; Frank McLaughlin, a resident of the Virgin Islands; McLaughlin Management, Inc., a Virgin Islands corporation through which McLaughlin conducted his business; and Arthur Pomerantz, Esq., a resident of the Virgin Islands and the attorney who signed the initial complaint.

The plaintiffs amended the complaint on July 27, 1999. The first amended complaint added many of the individual unit owners, including Anthony, as plaintiffs, removed the Association as a plaintiff, and made McLaughlin the lead plaintiff, individually and as manager of the Association. The plaintiffs amended the complaint for a second, and final, time on June 14, 2000, which restored the Association as a plaintiff on the suit, retained the individual owners, and removed McLaughlin's status as manager. On May 9, 2001, Anthony filed a motion to amend the pleadings yet another time, to include crossclaims against the Association, McLaughlin, and Pomerantz. The plaintiffs, except Anthony, settled and and signed a release of their claims against Independent and Lichtman on January 16, 2002.

The crux of the plaintiffs' claims centered around an insurance policy purchased by the Association on behalf of the condominium for the common areas of the building. Plaintiffs alleged that McLaughlin, on behalf of the Association, sought the assistance of Independent and Lichtman in purchasing disaster insurance, which the Association subsequently purchased on April 28, 1995. Independent and Lichtman used Geneva Assurance Syndicate Inc. ("Geneva"), a corporation that was

---

[2] All of the defendants and the plaintiffs other than Anthony have filed appellee briefs opposing both Anthony and Dagou's appeals in the instant appeal. For clarity, we cite and refer to the parties on appeal either by name or by their designation before the trial court (i.e. defendants or plaintiffs).

a member of the Illinois Insurance Exchange, as the lead syndicate for the policy sold to the Association. Less than a month after the purchase, in May 1995, the Illinois Insurance Exchange declared Geneva insolvent. Four months later, on September 15, 1995, Hurricane Marilyn caused extensive damage to the Contant View Condominiums. When Geneva was unable to pay on the Association's claim, the plaintiffs initiated this suit against Independent and Lichtman for negligent misrepresentation, fraud, breach of fiduciary duty, bad faith, and breach of contract. The Association was the only entity listed as insured on the Declaration Page for the insurance.

## 1. Appellant Patrick Anthony.

The defendants first moved for summary judgment on October 30, 2000. After the settlement that released the defendants from the claims of all of the other plaintiffs, defendants again moved for summary judgment against Anthony on January 24, 2002. After three renewals of that motion on April 17, 2002, October 8, 2002, and January 7, 2003, the Superior Court entered an order on December 17, 2009 granting the motion for summary judgment and dismissing Anthony's claims with prejudice.

In granting the defendants' motion for summary judgment, the Superior Court focused on three issues: (1) the Association's settlement bound Anthony and barred his suit; (2) the defendants never made any representations to Anthony on which he could rely;[3] and (3) Anthony did not own Unit 2D as of September 15, 1995 and thus no fiduciary duty extended to him nor could there be any breach to him for the purposes of bad faith insurance practices or contract law. The Superior Court found that there was no material issue of genuine fact on any of those issues.

Thus, having determined that Anthony failed to present a material issue of genuine fact, the Superior Court granted summary judgment to the defendants and dismissed the case.[4] Anthony timely filed a Notice of Appeal on January 15, 2010. In his appeal, Anthony argues (1) that

---

[3] The trial court construed Anthony's misrepresentation claim as negligent misrepresentation, instead of fraudulent misrepresentation, due to a failure on Anthony's part to claim any "knowing" misrepresentation of facts. (App. 11.) Anthony has accepted this construction on appeal.

[4] The third defendant, C.E. Brathwaite, Inc. appears to no longer be a viable entity from which Anthony can receive a judgment, thus the trial court dismissed all claims against it

522

summary judgment was inappropriate on all claims and (2) that the Superior Court erred by dismissing the case without allowing him leave to file crossclaims against the Association, McLaughlin, and Pomerantz.

## 2. Appellant Verna Dagou.

Dagou moved to intervene as of right on May 9, 2001, the same day Anthony moved to amend the pleadings to assert crossclaims against Pomerantz, McLaughlin, and the Association. The Superior Court's docket indicates that her motion to intervene followed approximately three years after the original complaint's filing, and approximately eleven months after the filing of the last amended complaint. The Superior Court issued a Scheduling Order on October 12, 2000, which set the deadline for completion of factual discovery at October 30, 2000 and for expert discovery at January 31, 2001. The Superior Court's docket indicates that the parties largely followed those timelines and that discovery was complete as of January 31, 2001, four months prior to Dagou's motion to intervene. The defendants filed the first dispositive motion, a motion for summary judgment, with the Superior Court on October 30, 2000. That motion was still pending at the time of both Dagou's motion and the settlement. However, despite not being an individually named plaintiff, counsel represented Dagou at all depositions and at the settlement discussions.

On December 17, 2009, the Superior Court entered an order, accompanied by a memorandum opinion, denying Dagou's motion to intervene. In denying the motion, the Superior Court focused on four issues: (1) the timeliness of the motion; (2) the applicant's interest in the litigation; (3) whether that interest could be affected or impaired by the litigation; and (4) whether the applicant's interest was already represented by an existing party in the litigation. *See McLaughlin v. Indep. Ins. Advisors*, Civil Case No. ST-98-CV-338 (V.I. Super. Ct. Dec. 17, 2009) (citing *Gen. Star Indem. Co. v. V.I. Port Auth.*, 224 F.R.D. 372, 374-75, 46 V.I. 351 (D.V.I. 2004)). The Superior Court found that Dagou's motion, which needed to only fail one part of the test to warrant denial, failed all four.

because continuing against it would be "futile." (App. 7 n.1.) Anthony's Notice of Appeal does not include that dismissal in the issues before this Court.

523

The trial court rejected Dagou's contention that her motion was timely. In applying the standard articulated in *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder*, 72 F.3d 361, 33 V.I. 311 (3d Cir. 1995), the court reasoned that allowing intervention at such a late stage of the proceedings — three years into litigation, at the end of discovery, and after dispositive motions had been filed — would cause prejudice to the parties to the litigation and thus found the motion was untimely. The Superior Court also noted that Dagou had failed to provide any justification or reason for the delay in requesting intervention. Additionally, the Superior Court determined that Dagou lacked a sufficient interest in the litigation, as the pleadings deal with alleged misrepresentations from the defendants to McLaughlin on behalf of the Association, during negotiations to which Dagou was not a party, and that the condominium property itself was not directly the "subject of the claims of the parties." (App. 5-6.) Finally, the trial court compared the interests of Dagou in the litigation to the interests already asserted in the litigation, and found her interests "identical" to those of the already present named parties. (App. 6-7.)

On December 17, 2009, having determined that Dagou failed to meet the requirements for intervention as a matter of right, the Superior Court dismissed her motion to intervene. Dagou timely filed her Notice of Appeal on January 15, 2010.

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." "A Superior Court order granting a party's motion for summary judgment is a final order within the meaning of Section 32 of the Code." *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 418 (V.I. 2009). Likewise, title 4, section 32(a) of the Virgin Islands Code provides jurisdiction over Dagou's claim because "the denial of a motion to intervene is a final, appealable order." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1179 (3d Cir. 1994).

"A trial court's grant of summary judgment is subject to plenary review." *Sealey-Christian*, 52 V.I. at 418. A grant of summary judgment is appropriate where the pleadings, the discovery and disclosure materials

on file, and any affidavits show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).[5]

> In essence, appellate courts reviewing the granting of motions for summary judgment are charged with undertaking three basic tasks; namely to: (1) accept, (2) allow, and (3) ask. Initially, the court must accept "[the non-moving party's] allegations . . . as true, even if in conflict with those of the moving party." Next, the court must allow "[a]ny inference drawn from the underlying facts contained in the evidentiary sources" to be viewed in the light most favorable to the nonmoving party. Finally, the court must ask whether, "from the evidence available at the time of the motion's disposition, a jury could reasonably have inferred either directly or circumstantially that plaintiff's injuries [were proximately caused by the defendant.]"

*Sealey-Christian*, 52 V.I. at 420 (citations omitted) (quoting *Bushman v. Halm*, 798 F.2d 651, 656-57 (3d Cir. 1986)).

▆ The standard of review for a denial of a motion to intervene is abuse of discretion. *Alcan Aluminum*, 25 F.3d at 1179. However, the review in intervention as of right cases is more searching than the normal abuse of discretion standard. *See Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987). Despite that, the appellate court should "not upset the [trial] judge's determination unless he has applied an improper legal standard or reached a decision that we are confident is incorrect." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir. 1984); *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380, 107 S. Ct. 1177, 94 L. Ed. 2d 389 (1987) (Brennan, J., concurring) ("Federal Rule of Civil Procedure 24 distinguishes a permissive intervenor from an intervenor of right by the stake each has in the litigation. The intervenor of right has an interest in the litigation that it cannot fully protect without joining the litigation, while the permissive

---

[5] According to Superior Court Rule 7, the Federal Rules of Civil Procedure apply in the Superior Court to the extent they are not inconsistent with any other Superior Court Rule. Federal Rule of Civil Procedure 56 was completely "re-styled" effective December 1, 2010, and the language above states the current version. While this re-written version was not in effect when the trial court ruled in this case, since no substantive change was effected by the revision, the current language of the Rule is used in this opinion.

intervenor does not. Accordingly, a district court has less discretion to limit the participation of an intervenor of right than that of a permissive intervenor.").

## III. DISCUSSION

We begin our discussion by turning first to Dagou's argument that she should have been permitted to intervene as of right, and then we address Anthony's arguments that the Superior Court erred by granting summary judgment to the defendants.

### 1. The Superior Court correctly determined that Dagou's motion to intervene was untimely.

Federal Rule of Civil Procedure 24(a) provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To determine if the trial court has abused its discretion in denying an application for intervention, this Court must consider the four requirements that must be met in order to be eligible for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), that "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris*, 820 F.2d at 596. The would-be intervenor must meet all four requirements to be eligible for intervention as of right. *Mountain Top Condo. Ass'n*, 72 F.3d at 366. The applicant bears the burden of persuading the court that each element is met.[6] *See id.*

---

[6] Although Dagou also argues that the Superior Court should have allowed her to intervene through permissive intervention, we limit our discussion to Dagou's motion to intervene as

To intervene as of right, the applicant must first show that the motion to intervene was made in a timely manner. *Harris*, 820 F.2d at 596. The Superior Court determined that Dagou's motion to intervene was untimely, as it was not filed until three years after the filing of the complaint, after the close of all discovery, and after the dispositive motions had been filed. Finally, the court also noted that Dagou failed to present any justification for why she waited three years to file to intervene. For the reasons that follow, we agree with the Superior Court.

The determination of timeliness is a review of the totality the circumstances. *Mountain Top Condo. Ass'n*, 72 F.3d at 369. A court should be reluctant to refuse a motion to intervene by right solely due to untimeliness, given the important interest an otherwise-eligible intervenor by right would be denied. *Id.* In ruling on the timeliness of a motion to intervene as of right, the Court of Appeals for the Third Circuit has instructed that three factors must be considered: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties;[7] and (3) the reason for the delay. *Id.*

"The mere passage of time . . . does not render an application untimely." *Id.* Instead, "the critical inquiry is: what proceedings of substance on the merits have occurred?" *Id.* The focus on the proceedings rather than the time is due to "the stage of the proceeding [being] inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Id.* at 370.

---

of right, pursuant to Federal Rule of Civil Procedure 24(a). Dagou's assertion that she should be granted permissive intervention was never placed before the Superior Court, and "[i]t is well established that failure to raise an issue in the [trial] court constitutes a waiver of the argument on appeal." *V. I. Port Auth. v. Joseph,* 49 V.I. 424, 429 (V.I. 2008) (internal marks and citation omitted).

[7] The question of prejudice to the parties, which is the second requirement to find a motion timely, is generally tied intimately to the stage of the proceedings and courts often do not discuss them separately. *Mountain Top Condo. Ass'n,* 72 F.3d at 370 (describing the stage of the litigation and the prejudice to the parties as "inherently tied"). Where there is a specific motion or settlement pending, however, the court may take into consideration the impact of the intervention on those pending matters. *See, e.g., id.* (discussing impact on "deep-sixing" settlement discussions); *see also Choike v. Slippery Rock Univ. of Pa.,* 297 Fed. Appx. 138, 141 (3d Cir. 2008) (unpublished) (considering impact of intervention on pending settlement agreement); *Liddell v. Bd. of Educ.,* 98 F.R.D. 548, 551 (E.D. Mo. 1983) (same). Here, because the trial court did not identify any specific motion or settlement which would have been affected by permitting Dagou to intervene, we will review the first and second timeliness requirements together.

█ Whether the litigation has reached a stage that is too advanced for a motion to intervene to be deemed timely depends on the circumstances of each particular case. *Compare Princeton, Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 328-29 (D.N.J. 2004) (allowing intervention as of right mid-trial due to a failure of any party to claim prejudice in the face of the intervention); *with Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 466-67 (M.D. Pa. 2005) (denying intervention as of right due to timeliness only seven months after the initial complaint was filed and while discovery was still pending because the would-be intervenor knew of the suit from inception and gave no reason for the delay). However, there are some general guidelines that can be gleaned from the cases at large, primarily focused around the concept that the later in the proceedings the motion comes, the more compelling the justification for that delay must be.

█ If the litigation has reached its final stage, generally with the entry of a final order, the courts deny intervention as untimely except in "extraordinary cases." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). Moving backwards through the stages of trial, the eve of and/or beginning of trial is the next stage in the litigation which is considered important. Courts will generally find a motion to intervene at the eve of trial or after it has begun untimely unless there is a showing of *no* prejudice to existing parties or a particularly compelling reason for the delay. *Compare Princeton Biochemicals, Inc.*, 223 F.R.D. at 328-29 (permitting intervention mid-trial due to no prejudice being argued by then-litigating parties); *with Iowa State Univ. Research Found., Inc. v. Honeywell, Inc.*, 459 F.2d 447, 448-49 (8th Cir. 1972) (denying intervention during trial as untimely because would-be intervenor knew of the suit "long before it made any effort to intervene" and because "[a]ny efforts to conduct additional discovery and to recall witnesses would result in substantial delay" and cost); *Sur. Adm'r's, Inc. v. Samara*, No. 04-05177, 2006 U.S. Dist. LEXIS 40889, *12 (E.D. Pa. June 20, 2006) (unpublished) (denying intervention on the "eve of trial" due to prejudice and lack of justification).

█ █ The next timeframe that courts consider is the end of discovery/the filing of dispositive motions, where courts generally find intervention untimely unless there is a compelling reason for the delay in filing. *See Choike v. Slippery Rock Univ. of Pa.*, 297 Fed. Appx. 138, 141 (3d Cir. 2008) (unpublished) (denying intervention after completion of

528

discovery because appellant failed to "convincingly explain its reason for the delay in filing its motion to intervene"); *In re Safeguard Scientifics*, 220 F.R.D. 43, 47 (E.D. Pa. 2004) (denying intervention after completion of discovery due to appellant's justification for intervention being foreseeable earlier in the case); *Liddell v. Bd. Of Educ.*, 98 F.R.D. 548, 549-50 (D.C. Mo. 1983) (rejecting intervention as untimely after discovery due to an inadequate justification for delay). However, where discovery has begun but is not yet closed, courts generally find intervention timely so long as some acceptable explanation is given for the delay. *Compare Mountain Top Condo. Ass'n*, 72 F.3d at 369-70 (permitting intervention four years after the complaint's filing, but with discovery still pending, because movant just learned that the movant's interest was in jeopardy); *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990) (holding that intervention was timely with discovery only partially completed and an acceptable justification for delay provided); *Martinez v. City of Oxnard*, 229 F.R.D. 159, 162 (C.D. Cal. 2005) (same); *with Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 466-67 (M.D. Pa. 2005) (denying intervention as untimely even though discovery was still ongoing, where reasons for the movant's delay were unpersuasive); *Rosa v. V.I. Water & Power Auth.*, 32 V.I. 89, 92 (Terr. Ct. 1995) (denying intervention as untimely despite discovery still being open as no justification was given at all for delay in filing). Finally, courts generally find that motions to intervene filed shortly after the complaint do not need any justification, as there was no delay to justify. *See, e.g., Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992) (finding a motion filed the day after the complaint to be timely, without question). The two most commonly accepted justifications for delay are closely related — that the would-be intervenor has only recently learned of the lawsuit or, despite having knowledge of the existence of the suit, only recently learned that its interest was at risk and/or that its interest was no longer being adequately represented by the current parties. *See, e.g., Mountain Top Condo. Ass'n*, 72 F.3d at 370 (late motion for intervention was justified where the movant only recently discovered that its interest was in jeopardy). However, a court is free to consider any justification for the delay offered by the movant, so long as it explains the "lapse in time" before filing a motion to intervene. *See Princeton Biochemicals, Inc.*, 223 F.R.D. at 328 n.3.

In this case, the trial court noted that discovery was completed at the time the motion to intervene was filed. Thus, Dagou would have had to present a compelling justification for her delay in filing the motion to intervene for this Court to determine that the trial court had abused its discretion. However, a review of her motion to intervene discloses that Dagou presented no justification for the delay to the trial court.

In her appeal to this Court, Dagou claims that discovery was still open at the time of intervention. Nevertheless, this claim is not supported by the trial court's docket.[8] Furthermore, as stated previously, a failure to present any justification at all will still cause a motion to intervene to fail, even when the application is made during the pendency of discovery. *See, e.g., Rosa*, 32 V.I. at 92. Dagou also presents on appeal, for the first time, a purported justification for her delay, claiming that McLaughlin and Pomerantz were spearheading the litigation for personal reasons, rather than in the interest of protecting the unit owners, and that they exercised increasing control as the litigation went forward. However, because Dagou never raised this argument before the trial court, we treat the argument as waived and decline to consider it. *V. I. Port Auth. v. Joseph*, 49 V.I. 424, 428 (V.I. 2008).

Under these circumstances, the trial court did not abuse its discretion finding the motion untimely where Dagou failed to present any reason for her delay in moving to intervene after the close of discovery and the filing of dispositive motions. Because the trial court need only have correctly determined that Dagou failed to meet one of the requirements for intervention, we need not address any of the other requirements to affirm the trial court's denial of the motion to intervene as of right. *See Mountain Top Condo. Ass'n*, 72 F.3d at 366.

---

[8] Dagou asserts that discovery deadlines were set by an order signed two months *after* her motion to intervene on July 20, 2001, and thus discovery was still open at the time of her motion. The order was actually signed and entered on July 20, 2000, approximately ten months *before* Dagou's motion to intervene. Dagou's confusion was likely the result of a typographical error in the lower court's opinion, where it refers to the July 20 order as being filed in 2001, not 2000. Regardless, the July 20, 2000 order was later superseded by the dates set in the October 12, 2000 order, and both that order and the docket show that discovery was closed by the time Dagou moved to intervene.

### 2. The Superior Court correctly granted summary judgment against Anthony on all of his claims, but erred by failing to address his motion to amend the pleadings.

On appeal, Anthony argues that the Superior Court erroneously granted summary judgment because (1) the Association's settlement with and release of claims against the defendants does not bind Anthony, (2) there is a genuine issue of material fact as to whether Anthony relied on the misrepresentations from the defendants to the Association, (3) the trial court improperly determined that the defendants owed Anthony no fiduciary duty because it incorrectly calculated the date on which he became an owner of one of the units at Contant View, (4) likewise, the trial court improperly determined the date he became an owner and thus wrongly dismissed his breach of contract claim against the defendants, and (5) the trial court erred by failing to rule on his outstanding motion to amend the pleadings to assert crossclaims against McLaughlin and Pomerantz.[9] Because we find the first argument determinative of the second, third, and fourth, we address only the first and fifth of Anthony's arguments.

At the outset of this discussion, we note that it is undisputed that neither Anthony nor First Bank Virgin Islands ("FVI"), as Anthony's predecessor in interest, took part in the negotiations which form the basis for the action in this case. (*See* Pl.'s Br. 7-8.) It is likewise undisputed that the only entity which contracted for the insurance was the Association and that neither Anthony nor FVI were named parties to any contract involved in this case with the defendants. Therefore, all of Anthony's causes of action are derivative of his status as an owner of a unit at Contant View and a member of the Association.

### A. The trial court correctly determined that Anthony's claims are barred by the Association's settlement.

On January 16, 2002, all of the plaintiffs other than Anthony, including the Association, settled with the defendants and signed a release of their claims against the defendants. The lower court dismissed Anthony's

---

[9] Anthony also argues that he has a due process right to assert the claims against the defendants, but his discussion of due process rights was never raised to the trial court, and is thus waived. *V. I. Port Auth. v. Joseph*, 49 V.I. at 428.

claims as barred by the release signed by the Association, because the Association represented the interests of all of the Contant View owners in the litigation and Anthony's claims were all derivative of his status as an owner. Anthony argues that under title 28 section 926 of the Virgin Islands Code, his right as an owner-in-common of the common areas of the condominium was greater than, and could not be affected by, the rights of the Association. Therefore, he argues, the Association's release of the defendants from all claims was not binding on him, and thus trial court erred. Section 926 gives the board of directors of any condominium association the right to bring litigation "with respect to any cause of action relating to the common areas" but this provision also expressly indicates that this authorization for an association to bring legal action does not "limit[] the rights of any apartment owner." V.I. CODE ANN. tit. 28, § 926. All parties acknowledge that the Association has the right, under Virgin Islands Law, to purchase and maintain insurance coverage over the common areas. 28 V.I.C. § 924.

The defendants, on the other hand, stress that the Declaration that established the Contant View Condominium notes that

> the Board of Directors acting on behalf of the Association and all Unit Owners, shall have the *exclusive right to bind such parties* in respect to all matters affecting insurance carried by the Association, the settlement of a loss claim, and the surrender, cancellation, and modification of all such insurance.

(Supplemental App. 337 (emphasis added).) Since the negotiations surrounding the purchase of the insurance qualifies as a "matter[] affecting insurance carried by the Association," the defendants argue that the exclusive right to bind applies and Anthony is bound to the Association's settlement with the defendants.[10] (Def.'s Br. 10-11.)

 Anthony is correct in asserting that Virgin Islands law provides an owner and the Association co-extensive rights to sue for damages to common areas. *See* 28 V.I.C. § 926. Section 926 gives the Association, despite generally being an unincorporated entity that would not otherwise have the capacity to sue, a limited capacity to sue and be sued on behalf

---

[10] Anthony did not challenge the Settlement on its own terms. The terms of the Settlement are not before this Court on this appeal.

of the owners for issues concerning the property as a whole or dealing with two or more apartments within the property. *See Bd. of Dirs. of Shibui v. McGuire*, 16 V.I. 300, 307 (V.I. Super. Ct. 1979). Anthony rightly draws particular attention to the beginning of section 926, which authorizes the Association to sue for damages "[w]ithout limiting the rights of any apartment owner." 28 V.I.C. § 926. Therefore, as Anthony argues, no matter what the Association does in its decisions to sue, not sue, or settle its suits, an owner may bring an action in his individual capacity.

██ ██ What Anthony fails to recognize, however, is that he has restricted his ability to exercise that right in "all matters affecting insurance" by purchasing a condominium pursuant to that covenant in the Declaration. Section 906 of title 28 states that "[e]ach apartment owner shall comply strictly with the . . . covenants, conditions and restrictions set forth in the declaration . . . ." Section 906 even authorizes the Association to bring injunctive action against the individual owners to enforce the covenants of the Declaration. 28 V.I.C. § 906 ("Failure to comply with any of the [covenants, conditions and restrictions set forth the in the declaration] shall be ground[s] for an action to recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors . . . ."). In the Declaration, Anthony gave the Association the authority to bind him in all matters affecting insurance, and section 906 makes that covenant binding on him. Whatever right Anthony had under section 926 to sue before the Association settled was extinguished the moment the Association exercised its right to bind all of the owners in this "matter[] affecting insurance."[11]

---

[11] This conclusion is in accord with the cases that have addressed the point in other jurisdictions and with the principles of judicial efficiency and finality. In *Cigal v. Leader Development Corp.*, 408 Mass. 212, 557 N.E.2d 1119 (Mass. 1990), the Massachusetts Supreme Court noted that one of the purposes of a condominium association was to represent the owners in situations affecting the common areas/expenses, and that "[p]iecemeal litigation by individual unit owners would frustrate the statutory scheme, in which the association acts as the representative of all owners in common." *Id.* at 1122. *Accord Siller v. Hartz Mountain Assocs.*, 93 N.J. 370, 461 A.2d 568, 573 (N.J. 1983) ("It would be impractical indeed to sanction lawsuits by individual unit owners in which their damages would represent but a fraction of the whole. If the individual owner were permitted to prosecute claims regarding common elements, any recovery equitably would have to be transmitted to the association to pay for repairs and replacements."); *see also Calloway v. St. Paul Fire & Marine Ins. Co.*, No. Civ.A. 9801-ST-04742, 2000 Mass. App. Div. LEXIS 30, at *8 (Mass. Ct. App. Mar. 22,

Since Anthony is bound by the Association's settlement of all of the claims in the Complaint, we affirm the Superior Court's grant of summary judgment in the defendant's favor against all of Anthony's claims. Because the Superior Court correctly found that the release entitled the defendants to summary judgment against all of Anthony's claims, we need not consider whether Superior Court correctly determined that Anthony did not raise a genuine issue of material fact for each count individually.

## B. The Superior Court erred by failing to address Anthony's outstanding motion to amend the pleadings to assert his crossclaims against McLaughlin, Pomerantz, and the Association.

The Superior Court docket reflects that Anthony filed a motion for leave to amend the complaint on May 9, 2001 to assert crossclaims against McLaughlin, Pomerantz, and the Association. The Superior Court never ruled on Anthony's motion. On December 17, 2009, the Superior Court entered an Order ordering that the "file may be closed." (App. 15.) Since the Superior Court dismissed all claims and closed its case, this Court construes the motion to amend as having been implicitly denied. *See Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981) ("We find that the district court's order of October 27, 1980, granting the defendant's motion for summary judgment and dismissing the plaintiff's suit, was so inconsistent with the plaintiff's request for leave to amend to state a new claim for relief as implicitly to deny the motion to amend.").

■■ ■■ "[W]hile the Superior Court may allow a party to 'amend any . . . pleading for any omission or defect therein' . . . such amendments are not as of right, but are vested in the sound discretion of the Superior Court." *Harvey v. Christopher*, 55 V.I. 565, 577-78 (V.I. 2011) (quoting SUPER. CT. R. 8); *see also Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 699 n.4 (V.I. Sept. 2, 2011) ("[A]ny motion to amend filed on remand would not be granted as of right, but would be instead vested in the sound discretion of the trial court and its decision would be subject only to a

---

2000) (unpublished) (affirming summary judgment against unit owner in favor of insurance company where insurance company paid association under the policy directly).

review for an abuse of that discretion."). However, while "the grant or denial of an opportunity to amend is within the discretion of the [trial court]," the "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion . . . ." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Because the Superior Court refused the motion to amend "without any justifying reason," it abused its discretion, and thus we remand the case for consideration of the motion to amend to add the crossclaims in a manner not inconsistent with this Opinion. *See id.* (listing "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." as reasons to deny a motion to amend).

## V. CONCLUSION

Because Dagou filed her motion to intervene as of right after the close of all discovery without any justification for her delay, the Superior Court did not abuse its discretion by finding her motion untimely. The Superior Court also correctly found that Anthony's claims were barred by the Association's settlement with the defendants, and thus its grant of summary judgment on all of those claims is affirmed. However, the Superior Court did abuse its discretion in failing to give a reason for its denial of Anthony's motion for leave to amend to file crossclaims against the Association, McLaughlin and Pomerantz. Thus we remand Anthony's case to the Superior Court for determination of the motion to amend in accordance with this Opinion.