## IN THE MATTER OF Q.G., a minor

S. Ct. Civil No. 2013-0099

Supreme Court of the Virgin Islands

February 28, 2014

KYE WALKER, ESQ., The Walker Legal Group, St. Croix, USVI, *Attorney for Appellant Duane Byrd.*

BRUCE D. SPECTOR, ESQ., St. Croix, USVI, *Attorney for Appellant Duana Byrd.*

ESZART A. WYNTER, ESQ., Law Offices of Eszart A. Wynter, St. Croix, USVI, *Guardian Ad Litem for Appellant Q.G.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee Government of the Virgin Islands.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 28, 2014)

CABRET, *Associate Justice.* Duane Byrd, his daughter Duana Byrd, and his grandson Q.G. appeal the Superior Court's denial of Duane's motion to intervene in a case concerning the custody of Q.G. Despite the Superior Court's errors in summarily denying the motion and failing to apply the proper legal standard, we affirm the Superior Court's order because Duane[1] failed to meet his burden of showing he was entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Duana Byrd allegedly kidnapped her daughter, Y.G., from foster care in California in 2009, and California authorities issued a warrant for her arrest. After leaving California with Y.G., Duana traveled to Virginia, where she gave birth to a son, Q.G., in 2011. At some point after Q.G.'s birth — the record is unclear when — Duana, Y.G., and Q.G. lived with Duana's sister Candace Byrd in Chicago before moving to St. Croix in April 2013. On September 16, 2013, as Duana attempted to leave the Territory with Y.G. and Q.G., she was arrested on the California warrant.

With no one to take custody of the children in the Virgin Islands while Duana was detained, the police contacted the Virgin Islands Department of Human Services ("DHS"), which took emergency custody of Q.G. and Y.G., placing them in the Queen Louise Children's Home on St. Croix. Because the California Department of Social Services still had legal custody over Y.G., DHS arranged for Y.G. to return to California. The California Department of Social Services also agreed to take Q.G. into its custody in order to keep the siblings together, but could only do this if DHS had legal custody over Q.G. when California officials came to

---

[1] Because this case involves several people who share the same last name, we refer to them by their first names to avoid confusion.

retrieve Y.G. DHS then filed an emergency petition for temporary custody of Q.G. in the Superior Court on October 8, 2013, under title 5, section 2544(c) of the Virgin Islands Code. The Superior Court appointed counsel for Duana and Attorney Kye Walker as guardian *ad litem* for Q.G., and held the required informal hearing on the petition on October 9, 2013.

At the October 9, 2013 hearing, Raquel Francis, a DHS employee, testified that Duana's sister Candace — who still resided in Chicago — contacted DHS and expressed her willingness to take custody of both Y.G. and Q.G. After Francis's testimony, Duana testified that she had no family in the Virgin Islands, and wanted DHS to release Q.G. into Candace's care. Following the hearing, the Superior Court dismissed DHS's emergency petition as untimely in an October 10, 2013 Order, finding that the court was "constrained to deny" the petition because it was not filed within two days of DHS taking custody of Q.G. as required by 5 V.I.C. § 2544(c).[2] As a result, the court ordered DHS to release Q.G. from its custody.

In compliance with the Superior Court's order, DHS attempted to arrange for Candace to take custody of Q.G., but she could not travel to St. Croix because of her employment, and suggested that DHS allow Duane, who lived in California, to take custody of Q.G. instead. Because of Candace's inability to take custody of Q.G., DHS determined that he was effectively abandoned, and filed a second emergency petition in the Superior Court on October 15, 2013. The Superior Court conducted an informal hearing on this petition on October 17, 2013, with Attorney Walker again serving as guardian *ad litem* for Q.G. At the end of the hearing, the Superior Court granted DHS's petition and found probable cause to believe that Q.G. had been abandoned. The court then scheduled a ten-day probable cause hearing for October 28, 2013, as required by

---

[2] Section 2544(c) of title 5 provides that DHS must file a complaint or petition in the Superior Court within two days of taking a child into its custody. Although not at issue in this appeal, we note that the Superior Court cited no authority for the proposition that DHS's failure to comply with the two-day filing deadline required the court to deny the petition. As this Court has recently explained, when dealing with a statutory filing deadline, a court must "attempt to ascertain the Legislature's intent" to determine whether the deadline is jurisdictional — requiring the dismissal of an untimely filing — or merely a claims-processing rule that "do[es] not intend to limit a court's authority to hear a case." *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 435 (V.I. 2013) (quoting *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011)); *see also Brooks v. Gov't of the V.I.*, 58 V.I. 417, 424-26 (V.I. 2013).

5 V.I.C. § 2544(d), but Attorney Walker stated that she may not be able to attend on that date and moved to be relieved as counsel. The Superior Court granted the motion and appointed another attorney to serve as guardian *ad litem.*

On October 28, 2013, shortly before the start of the probable cause hearing, Attorney Walker filed a motion to intervene on Duane's behalf,[3] which the Superior Court summarily denied. The court then conducted the probable cause hearing. At the start of the hearing, the Superior Court — over the objections of both Duana and Q.G.'s guardian *ad litem* — admitted court documents from California indicating that Duana may suffer from mental health issues and had alleged that numerous individuals, possibly including Duane,[4] had sexually abused Y.G. Raquel Francis then testified that DHS had released Y.G. into the custody of the California Department of Social Services and that this agency was no

---

[3] After Attorney Walker withdrew as Q.G.'s guardian *ad litem*, she agreed to represent another party, Q.G.'s grandfather Duane Byrd, in his attempt to intervene in the same action. In its Rule 4(f) submission, the Superior Court expressed concern with this, characterizing it as "ethical boundary-crossing." While it is apparent from the record that Attorney Walker believed she was acting in Q.G.'s best interests throughout, we share the Superior Court's concern. Although this Court has never addressed the role of a guardian *ad litem* in an abuse or neglect case, 5 V.I.C. § 2542 makes clear that a guardian *ad litem* appointed under this section serves as the child's attorney by providing that "[i]n every case of child abuse or neglect the court shall appoint <u>counsel for the child</u> to act in the role of guardian *ad litem*." 5 V.I.C. § 2542 (emphasis added). This role as the child's counsel requires the guardian *ad litem* to "represent[ ] the child's rights, welfare, interest and well-being and . . . advocate the child's viewpoint," and the guardian *ad litem* also "may interview witnesses, examine and cross-examine witnesses, introduce other evidence, make recommendations to the court and participate in the proceedings to the degree appropriate for adequately representing the child." *Id.; see Ex parte R.D.N.*, 918 So. 2d 100, 103-04 (Ala. 2005) ("[i]f a guardian *ad litem* is to argue the case as any other attorney involved in the case, then it follows that rules of ethics applicable to lawyers . . . apply to the conduct of a guardian *ad litem* in a court proceeding" (internal quotation marks and alteration omitted)); *S.G. v. D.C.*, 13 So. 3d 269, 282 (Miss. 2009) (where a guardian *ad litem* was appointed as "an attorney representing the children, he owed the children all of the loyalty, duties, and confidentiality mandated by the attorney-client relationship"); *cf. In re Maynard*, 60 V.I. 446, 451 (V.I. 2014) ("a concurrent conflict of interest exists, so as to preclude representation, 'if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a former client' " (quoting MODEL RULES PROF'L CONDUCT R. 1.7(a)(2))).

[4] These documents recount numerous instances in which Duana alleged that individuals had sexually abused Y.G. — including an unnamed grandfather, an aunt, a neighbor, as well as an "Uncle Duane" — leading state officials to suspect Duana of having a "specific paranoia" regarding sexual abuse and molestation.

longer willing to take Q.G. into its custody after the Superior Court's denial of DHS's first petition. Francis also testified that DHS had not yet been able to properly vet Duane as a caretaker for Q.G. Duane, who had arrived in St. Croix to take custody of Q.G., then testified to his fitness as a caregiver — including his employment and home environment — and that he had retained Attorney Walker to represent him in his attempt to intervene.

■ After this testimony and arguments by the parties, the Superior Court granted DHS's emergency petition. Duane then timely appealed the Superior Court's order denying his motion to intervene on November 12, 2013.[5] After Duane took this appeal, the Superior Court filed a submission with this Court under Supreme Court Rule 4(f)[6] on December 16, 2013, explaining its decision to deny the motion for intervention. In its Rule 4(f) submission, the Superior Court explained that because Duane "did not have a custodial interest in the minor[, he] did not have an unconditional right to intervene." The court also found that Duane was not able to take custody of Q.G. absent vetting by DHS, particularly given the possible allegations contained in the California court documents.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Although the Superior Court's order granting DHS's emergency petition is not a final order under section 32(a), *Bryant v. People*, 53 V.I. 395, 402 (V.I. 2010) ("the Legislature did not intend for the temporary custody order issued after the

---

[5] Duana and Q.G. (through his guardian *ad litem*) joined in this notice of appeal and informed this Court that they both join Duane's appellate brief in full. It is unclear to what extent either Q.G. or Duana have standing to appeal the denial of a motion to which they were not parties. However, as standing is merely a claims-processing rule in Virgin Islands courts and the Government fails to raise this issue, it is waived. *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564-65 (V.I. 2012) ("[S]tanding . . . functions in the courts of the Virgin Islands as a claims processing rule that is subject to waiver should [a] party . . . fail to raise it in a timely manner.").

[6] Supreme Court Rule 4(f) provides in relevant part that after the filing of a notice of appeal, "the trial judge may file and mail to the parties and the Clerk of the Supreme Court a written opinion or a written amplification of an earlier written or oral recorded ruling or opinion." This Court accepted the Superior Court's Rule 4(f) submission in a December 17, 2013 Order. *In re Q.G.*, S. Ct. Civ. No. 2013-0099, slip op. at 1 (V.I. Dec. 17, 2013).

probable cause hearing to be a final adjudication"), the order denying Duane's motion to intervene is final, and therefore we have jurisdiction over this appeal. *Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 524 (V.I. 2012) (" 'the denial of a motion to intervene is a final, appealable order.' " (quoting *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1179 (3d Cir. 1994))).

## III. DISCUSSION

■ Duane first argues that the Superior Court erred in summarily denying his motion to intervene without explanation. We agree. While we normally review the Superior Court's denial of a motion to intervene for an abuse of discretion, *Anthony*, 56 V.I. at 525, "meaningful review is not possible where the trial court fails to sufficiently explain its reasoning." *Rieara v. People*, 57 V.I. 659, 668 (V.I. 2012) (reversing and remanding for "the trial court to more thoroughly explain its reasons" for denying a reduction of bail); *see also In re N.J.*, S. Ct. Crim. No. 2013-0032, slip op. at 1-2 (V.I. May 17, 2013) (summarily reversing the denial of a motion for pretrial release where the trial judge failed to explain the reasons for the denial).

■ Intervention as of right in the Superior Court is governed by Federal Rule of Civil Procedure 24(a)(2),[7] which provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the sub-

[7] Federal Rule of Civil Procedure 24(a)(2) applies in the Superior Court pursuant to Superior Court Rule 7 because no Virgin Islands statute or court rule addresses intervention as of right in this instance. SUPER. CT. R. 7; *see also Sweeney v. Ombres*, 60 V.I. 440, 444 (V.I. 2014) ("[T]he Federal Rules of Civil Procedure . . . represent rules of last resort . . . and should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedents from this Court reveals the absence of any other procedure."). Duane argues in his reply brief that Superior Court Rule 96 — which provides that "[t]he parents, guardians or persons having control and supervision over the child shall be necessary parties to the proceedings in all juvenile causes" — made him a necessary party to the proceedings because Duana signed a document purportedly transferring custody of Q.G. to him. But aside from citing Rule 96, Duane fails to explain how simply signing this document made him a "guardian[] or person[] having control and supervision over" Q.G. for the purposes of Rule 96. *See* 15 V.I.C. §§ 821-827 (setting out the procedure for the Superior Court to appoint a guardian for a minor); V.I.S.CT.R. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority[ ] are deemed waived for purposes of appeal").

ject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Accordingly, in ruling on a motion to intervene under Rule 24(a)(2), the Superior Court must determine whether the applicant has established that "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Anthony*, 56 V.I. at 526 (citing *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)).

██ Recognizing its error in summarily denying Duane's motion, the Superior Court filed a Rule 4(f) submission, concluding that Duane did not have an "unconditional right to intervene." Yet the court still failed to so much as cite Rule 24(a)(2), let alone apply the four-part test outlined by this Court in *Anthony*.[8] Therefore, there is no question that the Superior Court committed error in summarily denying Duane's motion to intervene without explanation, and the Rule 4(f) submission failed to cure this error.

█ But it was Duane's burden to establish each of the four *Anthony* factors in support of his motion, and the failure to carry this burden as to any one factor defeats intervention. *Anthony*, 56 V.I. at 526 (citing *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366, 33 V.I. 311 (3d Cir. 1995)); *see also Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) ("the applicant bears the burden of showing that each of the four elements is met"); *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)

---

[8] Instead, the Superior Court dedicated a significant portion of its Rule 4(f) submission to discussing the significance of *In re N.R.*, 27 V.I. 46 (V.I. Super. Ct. 1992), which the parties appear to be under the impression is somehow controlling in this matter. However, as the decision of a single Superior Court judge, *In re N.R.* is not binding precedent on other Superior Court judges. *See Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 & n.7 (3d Cir. 1991) ("The doctrine of *stare decisis* does not compel one [trial] court judge to follow the decision of another.") (collecting cases). Furthermore, *In re N.R.* has little persuasive value here, as it did not address intervention as of right under Rule 24(a)(2), instead granting a motion to intervene by the grandparents of a minor subject to custody proceedings after concluding that the grandparents' relationship with the children — in which the grandparents "stood *in loco parentis* to the minors since their respective birthdates" — was entitled to constitutional protection. *Id.* at 48.

("The failure to satisfy any one of [the four factors] dooms intervention."). Consequently, if Duane failed to meet his burden with respect to any of the four factors, the Superior Court's error in summarily denying the motion to intervene and failing to apply the proper standard under *Anthony* would ultimately be harmless. V.I.S.CT.R. 4(i) ("No error or defect in any ruling . . . by the Superior Court . . . is ground for granting . . . . reversal on appeal where its probable impact . . . is sufficiently minor so as not to affect the substantial rights of the parties."); *see also Bruno v. People*, 59 V.I. 748, 754-55 (V.I. 2013) (holding that the Superior Court's error in failing to consider the appropriate legal standard in summarily denying a motion to withdraw a guilty plea was harmless where the defendant failed to carry his burden in moving to withdraw the plea).

▪ Duane argues that the Superior Court's error was not harmless, asserting that he satisfied all the requirements under Rule 24(a)(2). However, although Duane's appellate brief makes arguments on each *Anthony* factor, he presented few — if any — of these arguments to the Superior Court in his motion to intervene. *See* V.I.S.CT.R. 4(h) ("Only . . . arguments fairly presented to the Superior Court may be presented for review on appeal."); *see also* FED. R. CIV. P. 24(c) ("The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.").[9] Despite being seven pages long, the motion does not make any arguments explicitly going to the *Anthony* factors, containing only two paragraphs of substantive legal argument, with the remaining pages dedicated to reciting the factual background of the litigation. However, "Rule 24(a)(2) is construed broadly in favor of intervenors." *Freedom from Religion Found.*, 644 F.3d at 841. Broadly construing this factual background as an

---

[9] Duane asserts that because the Superior Court did not apply the correct legal standard, this Court is "required to apply the same Rule 24 standard the lower court should have utilized to conduct an independent review of the record." But Duane cites the "requirement of independent appellate review" applied in determining "actual malice" in defamation cases brought by public figures. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 510 (1984). Duane does not even attempt to explain how or why this standard would apply to our review of the denial of a motion to intervene under the Federal Rules of Civil Procedure, and it should go without saying that it does not. Instead, in applying the appropriate standard of review — abuse of discretion — this Court does not examine the *Anthony* factors in the first instance, but reviews the Superior Court's legal conclusions *de novo* and its factual findings for clear error. *Yusuf v. Hamed*, 59 V.I. 841, 848 (V.I. 2013).

attempt to demonstrate that the motion was timely, it is clear that Duane's motion was timely given the early stages of the proceedings and the expedited nature of the matter. *See Anthony*, 56 V.I. at 527 (in determining whether a motion is timely, a court should look to the "totality of the circumstances," including "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay"); *see also Karsner v. Lothian*, 532 F.3d 876, 886, 382 U.S. App. D.C. 275 (D.C. Cir. 2008) (holding that a motion to intervene was timely where the trial court had yet to take any action in the case before the motion was filed); *Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp.*, 120 F.3d 304, 323 (1st Cir. 1997) (considering "the fact that trial was expedited" in holding that a motion to intervene was timely even when made on the day the trial court issued its opinion). Further, DHS would have suffered no discernable prejudice from the intervention. *Anthony*, 56 V.I. at 527 n.7 ("The question of prejudice to the parties . . . is generally tied intimately to the stage of the proceedings and courts often do not discuss them separately."). It also seems clear that Duane had an interest in the outcome of the litigation, because — as Q.G.'s grandfather — the Superior Court could have granted him custody at the October 28, 2013 hearing. *See* 5 V.I.C. § 2544(d)(4)(A) ("The court, for good cause shown, may provide a preliminary order . . . transfer[ing] custody to . . . a relative or other individual found by the court to be qualified and willing to receive and care for the child"). This interest is undoubtedly affected by the outcome of Q.G.'s ongoing custody proceedings.

Nonetheless, Duane's motion failed to establish the fourth *Anthony* factor, that his "interest is not adequately represented by an existing party in the litigation." *Anthony*, 56 V.I. at 526. Although Duane's burden in establishing this factor "should be treated as minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972), his motion made no attempt whatsoever to meet it. *See In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (" 'In order to intervene as a matter of right under [Rule] 24(a)(2), an applicant must . . . show that the interest is not protected adequately by the parties to the action.' " (quoting *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992))). In his appellate brief, Duane argues that "Q.G.'s mother cannot devote proper attention to [Duane's] interests because she is facing criminal charges and has to limit her

participation in court proceedings so as to avoid incriminating herself." But Duane did not make this argument in his motion, nor did he make any other argument going to the interests of the existing parties.

██ ██ Moreover, even if Duane had attempted to satisfy this factor before the Superior Court, there is no dispute that Duane and Duana sought the same ultimate objective: Q.G.'s placement in Duane's custody. Where an applicant shares the same ultimate objective as an existing party to an action, a "presumption of adequacy of representation" arises that can only be rebutted through a "compelling showing" to the contrary. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 951 (9th Cir. 2009); *see also Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) ("While the burden to demonstrate inadequacy of representation is generally speaking minimal, we have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." (internal citation and quotation marks omitted)); *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) ("in cases where the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies"). Because Duane failed to make any showing that his interests were not adequately represented by existing parties — let alone one that could overcome this presumption — he failed to meet his burden in showing that he was entitled to intervention as of right under Federal Rule of Civil Procedure 24(a)(2).

Accordingly, even though the Superior Court committed error in summarily denying Duane's motion to intervene — and failed to cure this defect in its Rule 4(f) submission — this error was ultimately harmless because Duane did not meet his burden of establishing all four *Anthony* factors.

## IV. CONCLUSION

The Superior Court erred in summarily denying Duane's motion to intervene because meaningful appellate review is impossible where the Superior Court fails to explain the reasons for its actions. This error was not cured by the court's Rule 4(f) submission because the court failed to apply the four *Anthony* factors governing intervention motions under Federal Rule of Civil Procedure 24(a)(2). But this error was ultimately harmless because Duane failed to meet his burden of establishing all four

*Anthony* factors in his motion to intervene. Therefore, we affirm the Superior Court's October 28, 2013 Order denying Duane's motion to intervene.