**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**KHADEEM C. ROSARIO, Defendant**

**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**DIMITROUS A. JEFFERSON, Defendant**

Case No. SX-14-CR-012, SX-14-CR-176

Superior Court of the Virgin Islands

Division of St. Croix

May 20, 2015

MOLLOY, *Judge*

## MEMORANDUM OPINION

(May 20, 2015)

**BEFORE THE COURT** are the following motions: 1) *Motion to Deem 16 V.I.C. Section 99 Unconstitutional*, filed by Defendant Khadeem C. Rosario ("Rosario") on January 7, 2014; and 2) *Motion to Deem 16 V.I.C. Section 99 Unconstitutional and Violative of the Revised Organic Act*, filed by Defendant Dimitrous A. Jefferson ("Jefferson") on May 23, 2014. In the interest of judicial economy, the Court consolidates the two motions for joint consideration, and for the reasons that follow, the Court will deny the motions.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Khadeem C. Rosario

On January 4, 2014, Rosario was arrested under suspicion of committing aggravated assault and battery, destruction of property, and disturbance of the peace by threats, all during an act of domestic violence. Rosario appeared before a magistrate on January 7, 2014, for advice of rights and a bail determination. At the hearing, the magistrate granted bail in the amount of $1,000.00, $101.00 of which had to be secured by cash, along with other conditions for release. Rosario posted the required bond the same day and was released from the custody of the Virgin Islands Bureau of Corrections.

On January 7, 2014, Rosario filed the motion currently before the Court, arguing that 16 V.I.C. § 99 violates section 3 of the Revised Organic Act of 1954. 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution, at 87-88 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1). Rosario also challenges his confinement and conditions of release as denying several constitutional rights, including equal protection under the Fourteenth Amendment to the U.S. Constitution, due process under the Fifth and Fourteenth Amendments, and protection from excessive bail under the Eighth Amendment. Finally, Rosario claims the domestic violence statute is overbroad.

On January 21, 2014, the People of the Virgin Islands (the "People") filed a three-count complaint against Rosario, charging him as follows: Count I, aggravated assault and battery as an act of domestic violence, in violation of 14 V.I.C. § 298(5) and 16 V.I.C. § 91(b)(1) & (2); Count II, destruction of property during an act of domestic violence, in violation of 14 V.I.C. § 1266 and 16 V.I.C. § 91(b)(9); and Count III, disturbance of the peace by threats as an act of domestic violence, in violation of 14 V.I.C. § 622(1) and 16 V.I.C. § 91(b)(11). The People filed an opposition to Rosario's motion on April 11, 2014.

## B. Dimitrous A. Jefferson

On May 22, 2014, the Virgin Islands Police Department arrested Jefferson under suspicion of committing aggravated assault and simple assault and battery, both acts of domestic violence. A magistrate advised Jefferson of his rights the following day. The magistrate also granted bail in the amount of $1,000.00, and required that Jefferson post a $101.00 cash bond, along with other conditions of release. Jefferson posted the required cash bond later the same day and was released from the custody of the Virgin Islands Bureau of Corrections.

On May 23, 2014, Jefferson filed his motion challenging section 99, claiming that the statute violates the Revised Organic Act and precedent from the Supreme Court of the Virgin Islands. Moreover, Jefferson claims the statute denies him — and similarly situated individuals — of several constitutional rights, including those protected by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, the due process clauses of the Fifth and Fourteenth amendments, and the Excessive Bail Clause of the Eighth Amendment. Finally, Jefferson argues the domestic violence statute is overbroad, vague, and ambiguous.

The People filed a two-count complaint on June 9, 2014, alleging in Count I that Jefferson violated 14 V.I.C. § 298(3) and 16 V.I.C. § 91(b)(1) & (2), aggravated assault and battery as an act of domestic violence, and in Count II that Jefferson violated 14 V.I.C. § 299(2) and 16 V.I.C. § 91(b)(1) & (2), simple assault and battery as an act of domestic violence. The People did not file a response to Jefferson's motion.

## II. DISCUSSION

In these consolidated cases, the defendants challenge the constitutionality of Title 16, Section 99 of the Virgin Islands domestic

violence statute. A defendant may attack the constitutionality of a statute in two ways. First, he may claim the statute is unconstitutional as applied to him. Second, he may argue the statute is facially unconstitutional, thus voiding the statute as a whole. When a defendant asserts an as-applied challenge, he "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (citing *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)). As such, he seeks relief from a statute as it is applied to him. This requires the court to examine the facts of the case before it, "not any set of hypothetical facts under which the statute might be unconstitutional." *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

While an as-applied challenge focuses on a particular set of facts in the matter before the court, a facial challenge "tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273 (citation omitted); *see also Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 40 Cal. Rptr. 2d 402, 892 P.2d 1145, 1152 (1995) ("A facial challenge to the constitutional validity of a statute . . . considers only the text of the [statute] itself, not its application to the particular circumstances of an individual." (citation omitted)). Such a challenge requires a defendant to demonstrate that "no set of circumstances exists under which the [a]ct would be valid." *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014) (internal citations and quotation marks omitted); *accord Mitchell*, 652 F.3d at 405 (holding that a defendant "would have to show that the statute is unconstitutional in all of its applications" (internal citations and quotation marks omitted)). By alleging facial unconstitutionality, "a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question." *Chicago v. Morales*, 527 U.S. 41, 55 n.22, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). Because the defendant bears the burden of negating all possibilities for finding the statute constitutional, his task is the "most difficult challenge to mount successfully." *Id.* The United States Supreme Court has cautioned, however, "not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008).

■ One federal circuit has distinguished the two types of constitutional challenges as follows:

> "Facial and as-applied challenges differ in the extent to which the invalidity of a statute need be demonstrated (facial, in all applications; as-applied, in a personal application). Invariant, however, is the substantive rule of law to be used. In other words, how one must demonstrate the statute's invalidity remains the same for both types of challenges, namely, by showing that a specific rule of law, usually a constitutional rule of law, invalidates the statute, whether in a personal application or to all."

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 228 (2d Cir. 2006) (emphasis removed).

Defendants first argue 16 V.I.C. § 99[1] violated their right to bail because they were not permitted to post bail immediately following their arrests. Defendants next assert that the statute should be declared unconstitutional because it treats domestic violence defendants differently from other defendants charged with similar crimes. Defendants' third claim is that the statute deprives them of due process. Both defendants also suggest, by reference to a prior trial court decision, that section 99 violates the Eighth Amendment's prohibition against excessive bail,

---

[1] Section 99 reads, in pertinent part:

(a) A person arrested for a crime that constitutes domestic violence must appear before a judge for bail determination. In addition to the other standard factors, a judge shall determine whether to grant bail or to detain the defendant pending trial upon review of the following factors . . .

(b) A person arrested for or charged with a crime that constitutes domestic violence shall be admitted to bail as follows . . .

(c) When a defendant charged with a crime or offense involving domestic violence is released from custody before trial on bail or personal recognizance, the Court authorizing the release may as a condition of release issue an Order prohibiting the defendant from having any contact with the victim, including, but not limited to, restraining the defendant from entering the victim's residence, place of employment or business, or school, and from harassing the victim or victim's relatives in any way, prohibiting the defendant from using or possessing a firearm or any other weapon, from possessing or consuming any alcohol or controlled substances and by imposing any other order required to protect the safety of the alleged victim or to ensure the defendant's appearance in court . . .

16 V.I.C. § 99.

because it mandates bail amounts without any consideration of a defendant's ability to pay or other individualized factors. Finally, both defendants claim the statute is overbroad in its application. In addition to the identical arguments advanced by both defendants, Jefferson claims the statute is vague because it allows magistrates and judges to arbitrarily decide to mandate bail or release a defendant on personal recognizance. It is unclear whether Defendants are advancing only as-applied challenges to section 99, or if they are also asserting facial challenges, so the Court considers their arguments under each. *Cf. Mitchell*, 652 F.3d at 405-06 (addressing both as-applied and facial challenges when there was ambiguity about which challenge defendant mounted). The Court addresses each alleged constitutional challenge in turn, and first examines the constitutionality of section 99 as applied to Defendants. *See id.* at 406 ("the usual judicial practice is to address an as-applied challenge before a facial challenge" (internal citations and quotation marks omitted)).

## A. Right to Bail

Defendants claim section 99 violates the Revised Organic Act and the Virgin Islands Supreme Court decisions in *Browne v. People*, 50 V.I. 241 (V.I. 2008), and *Tobal v. People*, 51 V.I. 147 (V.I. 2009), by requiring the detention of a domestic violence defendant until a judge can make a bail determination. Defendants' position is that it is impermissible to detain a defendant until a bail hearing, and that bail must be granted immediately following arrest.

The Revised Organic Act "serves as the de facto constitution for the Virgin Islands." *Bryan v. Fawkes*, 61 V.I. 201, 232 (V.I. 2014) (citing *Todmann v. People*, 57 V.I. 540, 546 (V.I. 2012) ("The Revised Organic Act . . . is the Virgin Islands' equivalent of a state constitution that serves as the basic charter of government in the territory." (citations and formatting omitted)). Although there is no federal constitutional right to bail, "it is possible for the [Revised Organic Act] to confer on Virgin Islanders greater protections than those required by the United States Constitution." *Todmann*, 57 V.I. at 546 (citing *Murrell v. People*, 54 V.I. 338, 351 n.6 (V.I. 2010)). Congress conferred such additional protections when it enacted section 3 of the Revised Organic Act, which provides, *inter alia*, that "[a]ll persons shall be bailable by sufficient sureties in the case of criminal offenses, except for first-degree murder or any capital

offense when the proof is evident or the presumption is great." Revised Organic Act § 3.

■ The Supreme Court of the Virgin Islands recognized this protection in *Tobal*. 51 V.I. at 160 ("[S]ection 3 of the Revised Organic Act mandates that Virgin Islands judges grant bail in sufficient sureties to all defendants other than those charged with first degree murder where the proof is evident or the presumption is great."); *see also Williams v. Virgin Islands*, 53 V.I. 514, 522 (V.I. 2010). In *Tobal*, the Court declared a local detention statute — 5 V.I.C. § 3504a[2] — inapplicable to bail determinations, since that statute's provisions allowing for pretrial detention are inconsistent with the Revised Organic Act. *Tobal*, 51 V.I. at 160-61. The Court further held that the Legislature exceeded its authority in enacting section 3504a, since the enactment of that statute violated section 8(a) of the Revised Organic Act, which prohibits the Legislature from enacting laws inconsistent with the Revised Organic Act. *Id.* at 161.

■ Although bail was set for both defendants in these matters, Defendants argue that they should have been able to post bail immediately following their arrests, relying on the holdings in *Browne* and *Tobal*, and the language of the Revised Organic Act.[3] Defendants misconstrue the holdings of *Browne* and *Tobal*. *Browne* clarified the applicability of section 3 of the Revised Organic Act to first-degree murder defendants, and *Tobal* held that a judge may not detain a non-first-degree murder defendant pending trial merely because the defendant poses a flight risk or a danger to the community. Neither case stands for Defendants' proposition that a defendant must be bailable immediately following his arrest — nor does the language of section 3 of the Revised Organic Act — and the Court declines to adopt such a position. *Cf. Westerman v. Cary*, 125 Wn.2d 277, 892 P.2d 1067, 1075 (1994) (en banc) (interpreting a

---

[2] The portion of section 3504a that was struck down in *Tobal* authorized a court to order the pretrial detention of defendants charged with aggravated crimes such as murder in the first degree, rape in the first degree, arson in the first degree, robbery in the first degree, burglary in the first degree, kidnapping for ransom, and drug trafficking.

[3] In their memorandums, Defendants state, "[t]he term 'shall' is equivalent to the word 'must' and demands immediate action on the part of the Court." Rosario's Mem. of P. & A. 3 and Jefferson's Mem. of P. & A. 3. However, the words "shall" and "must" have no temporal requirement, and the Court does not read one into them. If Congress intended arrestees to be bailable immediately following arrest, it could have passed legislation to that effect, but it did not do so.

similar provision in Washington's constitution and holding the right to bail attaches at the initial appearance, even though a bail schedule is utilized for release prior to the initial appearance, and further requiring the bail determination to be made as soon as possible).

While the Revised Organic Act requires that bail be granted in sufficient sureties to all individuals except those charged with first-degree murder where the proof is evident or the presumption is great, it does not speak to who may grant bail, when bail must be granted, or what amount is "sufficient". Historically, judges of the Superior Court — and their predecessors in the territorial, municipal, and police courts — possessed the authority to grant bail. 5 V.I.C. § 3504 ("The judges of all the courts of the Virgin Islands shall have power . . . to grant bail in bailable cases.") (originally enacted by Act No. 160 of May 16, 1957, which created the Virgin Islands Code ("Code") and codified sections 11 and 12 of chapter 1 of title V of the former 1921 Codes). Upon the creation of the Court's magistrate division in 2009, the Legislature extended to the Superior Court magistrates the authority to grant bail. 4 V.I.C. § 123(a) ("Each magistrate may . . . issue . . . criminal process . . . including orders for the release on bail . . ."). Judges and magistrates exercise that authority by setting bail, along with other conditions for release, at an arrestee's initial appearance. SUPER. CT. R. 123(b)(4) ("At the Initial Appearance hearing, the court shall set such bail as is appropriate consistent with Rule 141 . . ."); SUPER. CT. R. 141 (rule governing the setting of bail and conditions for release).

■ Supplemental to an arrestee's right to a bail determination at his initial appearance, the Rules of the Superior Court provide most arrestees with an opportunity to be released on bail prior to that time. *See* SUPER. CT. R. 142. A court clerk or police officer is permitted to admit an arrestee to bail, although a judge retains the authority to set the amount required to be posted. *Id.* In 1993, then-Presiding Judge Verne A. Hodge issued a standing order promulgating an amended bail schedule, which set bail amounts based on the type of criminal offense. *In re Amended Order Authorizing Setting of Bail in Absence of a Judge*, 1993 V.I. LEXIS 17 (V.I. Terr. Ct. Dec. 31, 1993). A person under arrest could then be released pending his initial appearance by paying the appropriate amount listed on the bail schedule. It is evident, therefore, that an arrestee's right to release on bail prior to his initial appearance derives from a rule of the court and

standing order of the presiding judge, and not from the Code or the Revised Organic Act.[4]

In enacting section 99, the Legislature superseded Rule 142, in part, by carving out an exception for arrestees charged with committing acts of domestic violence. For those individuals, the Legislature intended to prohibit their release prior to their appearance before a judge or magistrate. Such action is within the Legislature's ambit. *Terrell v. Coral World*, 55 V.I. 580, 590 (V.I. 2011) ("[S]ection 21(c) of the Revised Organic Act provides the Legislature and the courts with concurrent authority to establish procedural rules governing court proceedings. . ." (citing *Phillips v. People*, 51 V.I. 258, 275 (V.I. 2009)).

■ Because Defendants were granted bail within a reasonable time following their arrests, section 99 did not violate the Revised Organic Act as applied to them. Further, since that statute is constitutional as applied to Defendants, they cannot meet their burden of proving that no set of circumstances exist under which the statute is valid, and their facial challenge also fails. Accordingly, the Court denies Defendants' motions insofar as they claim their detention prior to their bail hearings violate their right to bail.

## B. Equal Protection

Next, the Court considers whether section 99 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as applied to Defendants. The Equal Protection Clause is made applicable to the U.S. Virgin Islands through section 3 of the Revised Organic Act, also known as the territory's "Bill of Rights." *Webster v. People*, 60 V.I. 666, 672 n.2 (V.I. 2014); *Williams*, 53 V.I. at 522 n.7. The Equal

---

[4] A police officer's authority to admit bail for an arrestee finds its roots in an ordinance passed by the Colonial Council of St Thomas and St John on October 19, 1925. That ordinance amended section 6 of chapter 20 of title V of the 1921 Codes to permit the Director of Police "to admit or receive bail for persons under arrest or in actual custody for misdemeanor, whenever the admission to or receiving of bail is not demanded or required during office hours of the Police Judge." Notably, when the Virgin Islands Legislature consolidated and codified the laws and ordinances of the colonial and municipal councils in 1957, it did not include the above ordinance. Instead, the District Court of the Virgin Islands adopted a variant of that ordinance as Rule 142 in its first rules governing the Superior Court [then-Municipal Court]. Promulgated on December 18, 1956, the rules were amended on May 28, 1957 to coincide with the enactment of the Code. In substance, Rule 142 has remained unchanged since that time.

Protection Clause directs that all persons similarly situated be treated alike. *Id.* at 673 (quoting *Lawrence v. Texas*, 539 U.S. 558, 579, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003) (citation omitted)). When a statute discriminates on the basis of race, national origin, alienage, or sex, a court will apply one of two heightened levels of constitutional scrutiny in determining whether the statute passes Constitutional muster. *Id.* (citing *Orr v. Orr*, 440 U.S. 268, 278-79, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979)). For most statutory classifications, however, a court must only find a rational basis for upholding the statute; that is, "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993)). It is the defendant's burden to negate every conceivable basis that might support the statutory classification. *McIntosh v. People*, 57 V.I. 669, 686 n.15 (V.I. 2012) (internal citation and quotation marks omitted).

Jefferson argues section 99 violates the Equal Protection Clause of the U.S. Constitution because judges occasionally ignore subsection (a) of that statute and permit domestic violence defendants to be immediately released pending a future bail hearing. Defendants further argue section 99 denies their rights to equal protection under the law because subsection (a) requires that Defendants be detained until an initial appearance before a judge for a bail hearing, and subsection (b) requires that bail be set at fixed cash amounts, unlike other individuals charged with similar crimes.

As to Jefferson's first argument, "[t]he Equal Protection Clause prohibits the 'selective enforcement' of a law based on an unjustifiable standard." *PG Publ. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006)). In order to succeed on a selective enforcement claim, a defendant must show that he "was treated differently from other similarly situated [individuals], and . . . that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . ." *Id.* (internal citation and quotation marks omitted). It is not enough that a defendant can show he was treated differently from others; he must also show "an element of intentional or purposeful discrimination". *Id.* (citing *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944)); *cf. Gov't v. Kramer*, 22 V.I. 317, 321 (D.V.I. App. Div. 1986) ("Unequal application of criminal laws alone does not amount to a constitutional

violation unless intentional or purposeful discrimination is shown." (citation omitted)).

■ In support of his argument for selective enforcement, Jefferson cites *People v. Davis*, Super. Ct. Crim. No. 2014-126, and *People v. John*, Super. Ct. Crim. No. 2014-095, as examples where a domestic violence defendant was released on his own recognizance prior to his advice of rights and bail hearing. While Jefferson is able to point to two instances where a judge ordered the release of a domestic violence defendant prior to a bail hearing, thus demonstrating inconsistent application of subsection (a), he has not met his burden of proving intentional or purposeful discrimination against him. "The law cannot provide a constitutional remedy for every situation where a party may feel slighted; claims appealing to the Equal Protection Clause must meet a higher bar." *Aichele*, 705 F.3d at 115.

■ Turning to Defendants' next equal protection claim, Defendants do not assert that section 99 discriminates against any protected class warranting heightened scrutiny, and the Court finds no classification based on one of the protected classes. *Accord Longacre v. Lewis*, 2012 U.S. Dist. LEXIS 43876, at *5 (N.D. Cal. 2012) ("Individuals who have allegedly committed domestic violence do not, of course, constitute a protected class."). Therefore, the Court applies rational basis review. To determine whether there exists a rational basis for the enactment of section 99, the Court looks to 16 V.I.C. § 90,[5] which is a declaration of the Legislature's general purposes for enacting the domestic violence statute.

---

[5] Section 90 reads:

(a) The general purposes of this chapter are to:
 (1) Assure victims of domestic violence the maximum protection from abuse that the law can provide;
 (2) Create a flexible and speedy remedy to discourage violence and harassment against family members or others with whom the perpetrator has continuing contact;
 (3) Expand the ability of the Virgin Islands Police Department and law enforcement officers to assist victims, to enforce the law effectively in cases of domestic violence, and to prevent further incidents of abuse;
 (4) Develop a greater understanding within the Virgin Islands community of the incidences and causes of domestic violence through data collection;
 (5) Facilitate equal enforcement of the criminal laws of the Territory by deterring and punishing violence against family members and others who are personally involved with the offenders; and

Applying rational basis, the Court finds that Defendants failed to meet their burden to negate every conceivable basis for upholding the statute.

Defendants rely on *Virgin Islands v. Phillips*, 52 V.I. 130 (V.I. Super. Ct. 2009), a case from the judicial division of St. Thomas and St. John that declared section 99 unconstitutional. The court in *Phillips* found that no rational relationship existed between the purposes outlined in section 90 and the provisions of section 99. 52 V.I. at 140. The court also found the denial of bail pending an initial appearance for a bail determination will not assure victims maximum protection from abuse because it will not prevent further harm from coming to the victim once the defendant is released from custody. *Id.* The court concluded that the denial of bail pending initial appearance could bear no rational relationship to the purposes of enabling the police department to assist victims, enforce the laws effectively, and prevent further incidents of abuse. *Id.* at 141.

In its opposition to Rosario's motion,[6] the People cite *Government of the Virgin Islands v. Jackson*, 42 V.I. 54 (V.I. Terr. Ct. 2000), where the court held that another domestic violence statute did not violate that defendant's rights of equal protection. The People rely on the court's reasoning for upholding 14 V.I.C. § 582a[7] in *Jackson*, and ask the Court to apply the same reasoning to preserve section 99. In *Jackson*, the court found that, while section 582a "is underinclusive because it applies only to individuals charged with willfully disobeying domestic violence restraining orders . . . this classification is facially neutral with respect to race, national origin, gender and alienage and is thus judged only for its rationality." *Id.* at 59 (citation omitted). When subjected to rational basis review, the court upheld section 582a, citing section 90(a)(1), stating: "The Legislature has declared that one of its goals in enacting domestic violence laws is to '[a]ssure victims of domestic violence the maximum protection from abuse that the law can provide' . . . This is unquestionably a legitimate state interest." *Id.* at 60 (citation omitted). Having found that

---

(6) Recognize that battering is a serious crime which will no longer be excused or tolerated.

(b) This chapter shall be liberally construed to promote the general purpose stated in this section.

16 V.I.C. § 90.

[6] The People did not file a response to Jefferson's motion.

[7] Section 582a penalizes the willful disobedience of a lawful order issued pursuant to 16 V.I.C. § 97(b)(2) or 98.

the Legislature possessed a legitimate state interest in enacting the challenged statute, the court also found it rational "for the Legislature to require that, before a person arrested for domestic violence under section 582a may be released into the community, a judicial officer must consider the circumstances prompting the charge." *Id.* (citation omitted).

The Court respectfully disagrees with the *Phillips* court, and finds the reasoning in *Jackson* persuasive in this case.[8] Although the detention of a domestic violence defendant until a bail hearing cannot guarantee the victim's safety after the defendant posts bail, the Legislature's purpose does not purport to make such a guarantee. The purposes listed are clear: the Legislature intended to afford victims greater — not absolute — protection than the victim would have without the domestic violence statute. By requiring domestic violence defendants to remain in custody until a bail hearing, the Legislature intended to prevent an escalation of violence in the critical minutes and hours following a domestic violence complaint. Such detention is undoubtedly rationally related to the purposes stated in section 99. *See also U.S. v. Salerno*, 481 U.S. 739, 749, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) (holding a government's interest in preventing crime by arrestees is both legitimate and compelling).

This decision is in accord with the *Jackson* court's conclusion that the purposes stated in section 90 are unquestionably legitimate state interests. Further, the Court finds that the Legislature's means for furthering the state's interests are rationally related to those interests. Therefore, the application of subsection (a) to Defendants does not violate their equal protection rights, and their as-applied and facial challenges fail.

The Court can quickly dispose of Defendants' final argument for the invalidation of subsection (b), since neither Defendant has shown that bail was set in accordance with that subsection. While Defendants advance arguments for finding subsection (b) in violation of their rights to equal protection, they admit bail was not, in fact, set in accordance with that subsection. The records reveal the magistrate in each matter ignored subsection (b), setting bail at $1,000.00, and allowing each defendant to post a $101.00 cash bond and an $899.00 unsecured bond. If the magistrate in each matter followed that subsection, Defendants would not

---

[8] This Court is not bound by decisions of the Superior Court, which are only persuasive authority. *See In re Q.G.*, 60 V.I. 654, 661 n.8 (V.I. 2014) ("[T]he decision of a single Superior Court judge . . . is not binding precedent on other Superior Court judges." (citation omitted)).

have been able to post an unsecured bond. Thus, while Defendants claim subsection (b) was applied to them, the facts simply do not support their assertion, and they cannot show a personal equal protection violation.

█ Defendants' facial attack on subsection (b) also fails, since they have not shown that the cash bail schedule is not rationally related to any legitimate government interest. Ensuring a defendant's presence at trial is a legitimate government interest. *Bell v. Wolfish*, 441 U.S. 520, 540, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (acknowledging that ensuring a detainee's presence at trial is a legitimate state interest). The Court further finds that the cash bail schedule is rationally related to that interest. By creating a cash bail schedule corresponding to escalating and aggravating acts of domestic violence, the Legislature could have rationally believed increased bail amounts would be required to protect the community and to mitigate a defendant's increased flight risk. *Cf. Tobal*, 51 V.I. at 161 (finding that judges may consider a defendant's flight risk or danger to the community when setting bail).

## C. Due Process

The Court turns now to Defendants' claim that section 99 is unconstitutional as applied to them because that statute violates their due process rights under the Due Process Clause of the U.S. Constitution. The Due Process Clause is made applicable to the U.S. Virgin Islands through section 3 of the Revised Organic Act. *Webster*, 60 V.I. at 672 n.2. A due process challenge can allege either a substantive or procedural violation, or both. The Court reviews whether Defendants have made a valid claim under each doctrine.

### 1. Substantive Due Process

The first step in analyzing whether a statute violates due process is to determine whether the statute affects a fundamental right. *Beaupierre v. Virgin Islands*, 55 V.I. 623, 631 (V.I. 2011). If no fundamental right is affected, then the Court will apply rational basis review. *Id.* With rational basis review, the Court will uphold the statute if there exists at least one legitimate government purpose "that the legislature could rationally conclude was served by the statute." *Id.* at 631-32 (internal citation and quotation marks omitted); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). On the other hand, if the statute affects a fundamental right, then the Court will

apply the strict scrutiny test, in which the Court must strike down the statute unless the government can show the statute "advances a compelling state interest that is narrowly tailored to restrict the fundamental right to the least extent necessary to meet the compelling state interest." *Beaupierre*, 55 V.I. at 631 (citing *Roe v. Wade*, 410 U.S. 133, 155, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973)).

▮ Although a defendant has a fundamental liberty interest in freedom from arbitrary government detention, *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)), section 99(a) does not order the detention of individuals arrested on suspicion of committing criminal acts. Rather, the statute mandates a bail hearing for persons already under arrest for a crime constituting domestic violence. Thus, section 99(a) does not implicate Defendants' fundamental liberty interest against arbitrary government restraint.

▮ Next, the Court agrees with *Phillips*, and finds that Defendants do not have a fundamental right to bail. *See* 52 V.I. at 139, n.8 ("[T]he right to bail is not a fundamental right."). Although the right to bail is derived from legislative action, and is only a statutory right, the requirement that bail not be excessive is fundamental. *Sistrunk v. Lyons*, 646 F.2d 64, 68 (3d Cir. 1981) (holding that the "right to be free from excessive bail . . . belongs to those 'fundamental principles of liberty and justice which lie at the base of our civil and political institutions.' " (citing *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932)). "The plain meaning of 'excessive bail' does not require that it be beyond one's means, only that it be greater than necessary to achieve the purposes for which bail is imposed." *Rieara v. People*, 57 V.I. 659, 667 (V.I. 2012) (citing *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 661-62 (9th Cir. 2007)). Since Defendants do not argue that section 99 imposes excessive bail on them, the Court finds the fundamental right against excessive bail is not implicated in these matters.

▮ Having found that no fundamental rights are affected by the application of section 99 to Defendants, the Court applies rational basis review. In so doing, the Court expeditiously disposes of Defendants' substantive due process challenges, since the analysis under the substantive due process framework is the same as that for an equal protection challenge. *B&G Const. Co. v. Dir.*, OWCP, 662 F.3d 233, 256 n.22 (3d Cir. 2011) (citation omitted). Because section 99 survives

rational basis review for equal protection, it also survives review for substantive due process, both as-applied and facially.

### 2. Procedural Due Process

■ The Court must next determine whether the procedures employed in the deprivation of Defendants' liberty were constitutionally sufficient. In other words, "[w]hen government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746 (citation omitted). A criminal case involving domestic violence is usually commenced with a warrantless arrest by a police officer who has probable cause to believe that the arrestee committed an act of domestic violence. 16 V.I.C. § 94(a). Once arrested, section 99(a) requires the defendant to appear before a magistrate (or judge) for a bail determination. The Federal Rules of Criminal Procedure require that a defendant be taken before a magistrate without "unnecessary delay." FED R. CRIM. P. 5(a)(1)(A).[9] At the hearing, the magistrate will determine whether probable cause exists for the defendant's arrest. If found, the magistrate will then set bail and other conditions for release.

■ In their respective motions, Defendants do not dispute that the arresting officers found probable cause to arrest them for committing acts of domestic violence, but instead complain of their subsequent detention. Defendants also do not contest that they each received a bail hearing and were granted bail. Moreover, Defendants do not argue that the length of time in custody, from their arrests until their bail hearings, were in any way unreasonable. The Court finds the procedures employed in applying section 99 to Defendants were adequate and did not violate their due process rights. Since section 99 does not violate Defendants' procedural due process rights, it cannot be facially invalidated.

---

[9] The Federal Rules of Criminal Procedure are made applicable to the U.S. Virgin Islands pursuant to Rule 7 of the Rules of the Superior Court Because the federal rules "represent rules of last resort," they should not be used unless "a local rule, statute, or precedent from [the Supreme Court of the Virgin Islands] does not cover the same subject matter." *Percival v. People*, 62 V.I. 477, 485 n.1 (V.I. 2015). No local rule, statute, or precedent directs when a person arrested for a crime must be brought before a judge or magistrate for a bail hearing, so the Court looks to the federal rules for guidance.

## D. Excessive Bail

Defendants' motions make a passing reference to the *Phillips* court's finding that the fixed bail schedule in section 99(b) violates the Eighth Amendment's protection against excessive bail. *See* 52 V.I. at 144-47. As stated previously, subsection (b) was not applied to Defendants, so they have no cognizable claim of constitutional injury. Even if it was, Defendants have made no showing how bail is excessive, as applied to them.[10]

Defendants also cannot succeed with a facial challenge to the statute, since the bail amounts in subsection (b) may be appropriate for some defendants. *Accord Faulkner v. Gusman*, 2014 U.S. Dist. LEXIS 64369, at *19 (E.D. La. Apr. 18, 2014) (finding a Louisiana bail statute is not facially unconstitutional, since "[i]n many instances, a money bond for a defendant . . . will pass constitutional muster"). Further, because a bail determination requires individualized consideration for each defendant, it is simply not possible for Defendants to show that the bail amounts in subsection (b) are excessive as to all defendants charged with committing an act of domestic violence. *See Rieara*, 57 V.I. at 667 (holding that a court "must make an individualized determination in order to ensure that the bail is not excessive").

## E. Overbreadth

Defendants claim section 99 is overbroad in its application, yet do not cite any case law or provide any legal analysis supporting their contentions.[11] It is well settled that "the burden of establishing the unconstitutionality of a statute rests on [he] who assails it," and it is Defendants' responsibility to argue the merits of their motions; the Court may not act as litigant for them. *Metro. Cas. Ins. Co. v. Brownell*, 294 U.S. 580, 584, 55 S. Ct. 538, 79 L. Ed. 1070 (1935). Since Defendants wholly fail to present the Court with any legal argument supporting their claim

---

[10] It is immaterial to the analysis that Defendants posted bail, since the focus of the inquiry is whether the amount is "greater than necessary to achieve the purposes for which bail is imposed." *Rieara*, 57 V.I. at 667 (citing *Galen*, 447 F.3d at 661-62).

[11] *See* Rosario's Mem. of P. & A. 6 and Jefferson's Mem. of P. & A. 6 (stating that the "statute should be struck down because it is overbroad it its application").

447

that section 99 is overly broad, the Court denies their motions on this ground.[12]

## F. Void for Vagueness

Finally, Jefferson asserts section 99 is unconstitutionally vague because the release provisions contained therein are inconsistent with one another, resulting in arbitrary and discriminatory enforcement against him. To support his position, Jefferson relies on the U.S. Supreme Court opinion in *Hill v. Colorado*, 530 U.S. 703, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000), which holds, "[a] statute can be impermissibly vague for either two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." 530 U.S. at 732 (citation omitted). Jefferson also relies on the Virgin Islands Supreme Court's decision in *Codrington v. People*, 57 V.I. 176 (V.I. 2012), which applied the standard in substantially similar form: "a statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." 57 V.I. at 187 (internal citations and quotation marks omitted); *see also Freeman v. People*, 61 V.I. 537, 545-46 (V.I. 2014).

Because section 99 does not prohibit conduct, Jefferson must be asserting that section 99 authorizes or encourages arbitrary and discriminatory enforcement. According to Jefferson, subsections (b) and (c) are internally ambiguous because they contain irreconcilable bail requirements and encourage arbitrary release determinations by the Court. Jefferson argues subsection (b) mandates that courts follow a bail schedule, and does not permit the Court to consider individualized factors of defendants in setting bail, while subsection (c) permits a court to release a defendant on his own personal recognizance,[13] thereby causing some sort of ambiguity that leads to courts treating defendants who fall within the reach of section 99 in an arbitrary manner.

---

[12] Even so, it is unclear whether Defendants would be able to succeed on an overbreadth challenge, since the U.S. Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment" *Salerno*, 481 U.S. at 745 (citing *Schall v. Martin*, 467 U.S. 253, 269 n.18, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984)).

[13] Subsection (c) also permits the Court to set additional conditions for release.

"When interpreting a statute, [the Court must] look first to the plain meaning of its language and attempt to construe it in a way that would not result in injustice or absurd consequences." *Percival v. People*, 61 V.I. 187, 194 (V.I. 2014) (internal citation and quotation marks omitted). It is the intent of the Legislature which controls, and not the literal reading of the statute. *Gilbert v. People*, 52 V.I. 350, 359 (V.I. 2009). In ascertaining the intent of the Legislature, all parts of a statute must be read together. Further, "[w]hen the legislature adopts a law . . . it intend[s] that the entire statute be effective." *Id.* (citing *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995)).

█ Although section 99(b) requires that bail be set pursuant to the bail schedule, Jefferson's argument for the two paragraphs being irreconcilable is misplaced. A plain reading of the two paragraphs leads the Court to the following interpretation: the Court has the discretion to either set bail or release a defendant on his own recognizance, with additional conditions for release as the Court deems necessary; but, if the Court chooses to set bail, then it must do so under the framework provided in subsection (b), notwithstanding any additional bail required for the underlying criminal charge.

█ Further, the Court finds section 99 was not arbitrarily applied to Jefferson. Indeed, a statute which grants the Court discretion to set bail and conditions for release does not violate the Constitution on vagueness grounds merely because the Legislature gave the Court flexibility to exercise its judgment in making individualized release determinations. Jefferson has not demonstrated how section 99 amounted to an arbitrary and disparate determination by the Court against him, other than by claiming the Court's legislatively-authorized discretion amounts to arbitrary action.[14] Accordingly, the Court denies Jefferson's motion to the extent that he claims section 99 is unconstitutionally vague.

In the alternative, Jefferson invokes the rule of lenity in asking the Court to resolve the alleged ambiguities in section 99 by adopting an interpretation favoring the defendant. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants

---

[14] To the extent Jefferson claims courts have not consistently detained defendants until a bail hearing in accordance with section 99(a), such action would be inconsistent with the plain language of the statute, which clearly requires that domestic violence defendants be detained until the bail hearing, and is not a result of vagueness.

subjected to them[,]" and serves the purpose of "keep[ing] courts from making criminal law in [the legislature's] stead." *U.S. v. Santos*, 553 U.S. 507, 514, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) (citations omitted); *see also In re: Motylinski*, 60 V.I. 621, 639 (V.I. 2014) ("Under the rule of lenity, when the Court must interpret an ambiguous statute or court rule, the rule dictates that ambiguity . . . should be resolved in favor of lenity [to the defendant]." (internal citations and quotation marks omitted)). The rule applies to criminal statutes and the penalties they impose.[15] *See Gilbert*, 52 V.I. at 356 (citing *Gov't v. Knight*, 28 V.I. 249, 259 (3d Cir. 1993)); *see also Knight*, 28 V.I. at 271 ("This doctrine applies not only to substantive criminal prohibitions, but also to the penalties they impose." (citations omitted)).

 ▮ Jefferson is asking the Court to apply the rule of lenity to a statute that neither criminalizes behavior nor imposes a penalty for committing a crime. Although section 99 touches criminal procedure for defendants charged with a crime, that statute does not fall within the types of statutes for which the rule of lenity applies. Even assuming without deciding that the rule of lenity applies to criminal procedure, that rule does not apply in this matter, since the Court holds section 99 is not ambiguous. Therefore, Jefferson's motion is denied on that ground.

## III. CONCLUSION

For the reasons stated above, Defendants' motions are denied. As applied to Defendants and on its face, section 99 does not impermissibly deny Defendants of their right to bail, because Defendants were each given a bail hearing, at which time a magistrate granted bail. Additionally, section 99 does not violate Defendants' rights to equal protection and due process because it does not affect any fundamental rights, and because it is rationally related to a legitimate state interest. Defendants did not demonstrate that section 99 is overbroad in its application. Further,

---

[15] *Compare* BLACK'S LAW DICTIONARY 1543 (9th ed. 2009) (defining "criminal statute" as "[a] law that defines, classifies, and sets forth punishment for one or more specific crimes.") *and* BLACK'S LAW DICTIONARY 1544 (defining "penal statute" as "[a] law that defines an offense and prescribes its corresponding fine, penalty, or punishment") *with* BLACK'S LAW DICTIONARY 1247 (defining "penalty" as "[p]unishment imposed on a wrongdoer, usually in the form of imprisonment or fine . . .") *and* BLACK'S LAW DICTIONARY 1353 (defining "punishment" as "[a] sanction — such as a fine, penalty, confinement, or loss of property, right, or privilege — assessed against a person who has violated the law.").

subsections (b) and (c) of section 99 are not internally inconsistent, so the statute is not unconstitutionally vague. Finally, section 99 is not ambiguous, and does not criminalize or penalize behavior, so the rule of lenity does not apply. Therefore, Defendants' motions to declare section 99 unconstitutional and violative of the Revised Organic Act are denied. An appropriate Order follows.